RANKEN v. ST. LOUIS & B. SUBURBAN RY. CO.

(Circuit Court, S. D. Illinois. December 24, 1899.)

1. STREET RAILROADS — USE OF STREETS OR HIGHWAYS—RIGHTS OF ABUTTING OWNERS.

It is the settled law in Illinois that the construction of an electric railway on a street or highway imposes no additional servitude, whether the fee in the street or highway is in the municipality or in the abutting owner; and, where the right to construct such road is granted by the public authorities, an owner of abutting property has no standing in a court of equity to enjoin the same.

**2. JUDGMENT—EFFECT AS ADJUDICATION.**
A suit for an injunction was commenced by an owner of abutting property against a company which was constructing an electric railroad upon a highway, and also an action of trespass to recover damages for injuries done to plaintiff's property. In accordance with a stipulation made and filed in the latter action, both actions were dismissed, and judgments rendered against the defendant for costs; the defendant paying an agreed sum as damages, and agreeing to refill certain excavations. *Held,* that such judgments were a bar to any subsequent action based upon the same trespass, the effect of which could not be avoided by plaintiff by tendering back the money received, and by allegations that the agreement to refill the excavations had not been carried out.

**3. STREET RAILROADS—MANNER OF CONSTRUCTION—JURISDICTION TO CONTROL.**
The manner in which an electric railroad shall be constructed upon a public highway over which the county has control is a matter within the jurisdiction and control of the county board, with whose discretion a court of equity cannot interfere.

This was a suit in equity by an abutting property owner to enjoin the maintenance of an electric railroad upon a highway, and for other relief in relation thereto. On final hearing.

T. C. Mather, James M. Graham, and Wm. B. Thompson, for complainant.

Samuel P. Wheeler, D. M. Browning, and Wilbur N. Horner, for defendant.

ALLEN, District Judge. On October 21, 1898, the complainant exhibited his bill in this court, alleging that he is the owner in fee of certain lands in the bill described, situated in the county of St. Clair, in the state of Illinois; that said lands adjoin the St. Clair County Turnpike Company's road on the north, and that complainant's fee in said lands extends to the middle of said turnpike in part, and in part covers the whole width of said turnpike, subject in either case to the public easement therein; that the defendant company took possession of the north part of said turnpike road without license from complainant, and proceeded to construct a railway along and upon the north side of said turnpike road adjoining complainant's lands, and in so doing made excavations on complainant's lands, leaving high embankments between portions of said land and the turnpike road, greatly injuring complainant's lands, and cutting off access to said lands from said turnpike road, and otherwise greatly injuring said lands by throwing water from said railway roadbed in and upon complainant's lands, injuring the crops and soil thereof, and depreciating the market value of said lands, and tearing away and removing the fence of complainant along the north line of said turnpike road. The bill further alleges that complainant instituted an injunction suit and a trespass suit against defendant company in the St. Clair county circuit court, seeking to enjoin the defendant company from committing said grievances, and to recover damages for some of said trespasses, and in the former suit obtained an injunction, to which the defendant paid no attention, but continued said trespass and committed the grievances stated; that, pending said suits, complainant's attorneys attempted to compromise the causes of action, and upon some kind of indefinite

understanding between opposing counsel said suits were dismissed, and defendant paid complainant $250 for the destruction of his fence, and did a little filling of said excavations so made on complainant's lands, but has neglected and refused to fill the remaining excavations by it so made, and which were intended for and were a part of the consideration for taking possession of complainant's fee in said turnpike road; that defendant has no right to possess, occupy, and use complainant's fee in said turnpike road, or to impose additional servitude thereon, without first paying complainant therefor, by agreement with him, or by condemning it under the eminent domain law of Illinois; that defendant is insolvent, heavily mortgaged, and that defendant is about to sell its road, franchise, etc., to an innocent buyer, without paying complainant for said grievances, and without paying him for said fee in said turnpike road; and prays that defendant be enjoined from selling its road and franchise until it has paid the said damages, and for taking his fee in said turnpike road. The bill also prays that defendant be required to remove its railway off from complainant's fee in said turnpike until complainant is paid therefor, and that defendant be decreed to fill said excavations, or pay complainant for having the same done, and to construct farm crossings, etc. No restraining order was made on this bill, but on the 9th of January, 1899, the complainant filed what is termed a "supplemental bill," wherein it is alleged that defendant is about to lay down a track on said turnpike road, and on the south side thereof; that defendant has never obtained permission of complainant to construct said additional track over and upon his fee in said turnpike road; that the construction of said tract will impose a new servitude upon the fee title of complainant in said turnpike. The prayer of the supplemental bill is for an injunction restraining defendant from constructing said additional track, etc., or operating its cars thereon, etc. On the filing of the supplemental bill an order for a temporary injunction was made. On the hearing an amendment to the supplemental bill was filed, wherein the manner of construction of the north track is set forth, and the alleged circumstances of the compromise referred to in the original bill are detailed. A tender back of the $250 is alleged, and an offer made to pay defendant that sum.

Upon a full hearing of the case it appears that the turnpike road in question has been a public highway for more than 50 years, and that in accordance with law the St. Clair Turnpike Company was granted authority to establish a toll road thereon. The road or turnpike, however, remained under the control of the board of supervisors of St. Clair county, and this board granted to defendant the right to lay down and operate two lines of track, using electricity as a motive power. The power of the board of supervisors to make this grant is settled by the supreme court of Illinois in Trotier v. Railway Co., 180 Ill. 471, 54 N. E. 486. So far as the rights of the public are concerned, the grant of St. Clair county, through its board of supervisors, vested in the defendant company authority to use the highway in constructing and operating an electric railway,

98 F.—31

in connection with other public uses. The theory of the complainant is that, inasmuch as he has a qualified fee in the bed of the road or highway, he must be compensated by the defendant therefor, because the construction and operation of the electric railway will impose an additional servitude upon the highway and his qualified fee therein. I regard the question as settled in Illinois that the construction of an electric railway upon a street or highway imposes no additional servitude, whether the fee in the street or highway be in the municipality or the abutting owner. Chicago, B. & Q. R. Co. v. West Chicago St. Ry. Co., 156 Ill. 255, 40 N. E. 1008, 29 L. R. A. 485; Bond v. Pennsylvania Co., 171 Ill. 508, 49 N. E. 545. If, then, the construction and operation of an electric railway on the turnpike constituted no additional servitude, the complainant is without any standing in a court of equity on this account. All the other allegations in his bill relate to the manner of construction of the railway, except the one wherein defendant is charged with encroaching upon his lands adjoining the turnpike, and taking therefrom earth that was used in the construction. It will be observed that all these trespasses had been committed before the original bill was filed. The complainant instituted, as was shown on the hearing, an injunction suit against the defendant, and also an action of trespass to recover damages for the trespass now complained of. During the trial of the action of trespass, negotiations were opened, looking to a settlement of all these controversies. A stipulation was dictated to the court stenographer, and later transcribed and filed in the case. By this stipulation defendant agreed to pay complainant $250, and fill the excavations where soil had been removed from his lands adjoining the turnpike, and both the suits were to be dismissed at defendant's costs. The stipulated amount was paid and received. Both suits were dismissed, and judgments rendered against the defendant for costs. These judgments, in my opinion, constitute a complete bar. But it is alleged the defendant did not restore the soil where it had been removed, and for this reason the complainant may revive the original action by tendering back the money he received. The tender was not made for more than 10 months after the supplemental bill was filed, and failed to place the defendant in his original position, as no offer is made to repay the costs which the evidence shows were long since paid by the defendant, or to pay anything for the use of the money that complainant received more than 18 months before he offered to return it. I am clearly of the opinion that by no form of tender, or the amount thereof in this suit, can the complainant escape the effect of the judgment and decree referred to. These are, perhaps, unimportant, in the view I have of this feature of the case. Clearly, these questions concerning the manner in which the tracks are constructed or laid are all matters within the control and jurisdiction of the board of supervisors of St. Clair county. The exercise of such powers can be referred to no general head of equity jurisdiction. An attempt to exercise them would produce no good, and much harm, by bringing on conflicts of authority between the courts and the legally constituted authorities vested by the law with power in this

regard. Cairo & V. R. R. Co. v. People, 92 Ill. 170. In my opinion, the bill and supplemental bill as amended should be dismissed, and the injunction dissolved.