## HEFFERNAN *v.* BURNS.

1. FRAUD—EQUITY JURISDICTION—ADEQUATE REMEDY AT LAW.
   The concurrent jurisdiction that is exercised in chancery in cases of fraud does not extend to the granting of relief for fraudulent representations for which an action at law affords an adequate remedy.

2. SAME—CONTRACTS—SALES—EQUITY.
   Accordingly, the buyer under a conditional contract of sale of personal property connected with a rooming house, concerning which it is alleged the seller made false representations, is not entitled to a money judgment in equity where the purchaser remains in possession of the property and may set up the defense of fraud in any proceedings at law brought for the enforcement of the contract; nor will equity make a new contract for the parties by entering a decree that the seller accept the money paid, in full satisfaction of the price, and execute a bill of sale to complainant, as prayed in the bill.

Appeal from Wayne; Codd, J. Submitted April 9, 1913. (Docket No. 8.) Decided May 28, 1913.

Bill by Mary Heffernan against Anna Burns and another for equitable relief based on fraud. From a decree for defendants, complainant appeals. Affirmed.

*James H. Pound,* for complainant.

*McIntyre & Wheeler,* for defendant Burns.

STEERE, C. J. In this case complainant appeals from a decree of the Wayne county circuit court in chancery, dismissing her bill of complaint, which alleges that she was fraudulently induced to enter into a contract for the purchase of certain furniture in connection with the good will and business of a rooming house. Her prayer for relief asks cancellation of said contract and the restoration of money paid by her thereon, or, as an alternative, that a bill of sale of said furniture be ordered given her for the consideration already paid, and that an injunction be granted restraining defendant Anna Burns and her agent Lee from attempting to enforce said contract by a seizure of the furniture, now in complainant's possession, or by any other proceedings. Defendant Lee only figures in the case as defendant Burns' agent, by reason of a power of attorney which he held from her to collect deferred payments according to the terms of the contract.

The contract in question, dated August 31, 1911, is in its nature a conditional bill of sale. It purports to sell to complainant the furniture, fixtures, and other personal property constituting the contents of a rooming house in the city of Detroit for the sum of $1,000, $500 down and the remainder in monthly installments of $40. In its preparation a blank form of "contract and conditional sale" appears to have been used, which

is somewhat elaborate and freighted with various conditions. It provides for retention of title in the seller, prohibits removal of the property from where located, provides for repossession in case of default, with power to declare the purchase forfeited, and to sell the property at public or private sale for any deficiency of payments. An attorney fee of $50 is provided for in case of default and resale. It retains title in the vendor according to the usual form of installment plan conditional bills of sale. The scrivener appears to have been sadly confused as to who were parties of the first part or second part, but it seems to be conceded by all parties that the property in question was sold by defendant Anna Burns to complainant Mary Heffernan and the document was signed by the contracting parties. An inventory of the property sold was attached to the contract.

The failure of counsel to comply with rule 35 of this court renders it difficult to ascertain the dates of various proceedings, but apparently this suit was begun in January, 1912, and heard on pleadings and proofs taken in open court some time before May 3, 1912, on which date a decree was rendered dismissing the bill and cross-bill with costs in favor of defendant. On November 9, 1912, a record of the case was settled and signed for review in this court, time for doing so having been extended on application of complainant's present counsel, on a date not given, but on her affidavit of September 19, 1912, stating as reason for the delay that, though desirous of appealing, she—

"Did not know what to do, or how to do it, until recently, because her solicitor of record was so busy in politics that he had not time to make up his mind, so that petitioner and deponent got another."

The record contains some lengthy historical affidavits in connection with this application, made after the case was heard and decree rendered, which appear to be treated as evidence in the case, under what

authority we are not advised. The confusion which this leads to is illustrated by the statement of complainant's counsel: That she insists—

"Defendant Anna Burns sold certain of her property to complainant by a conditional sale, upon false and fraudulent representations, as claimed. That defendant got $500 of complainant's money; has got her furniture, which complainant did not own, which defendant had given to her (complainant) with one hand and taken it away with the other; sold it, defendant says, for $60, and still has a claim of about $500 against complainant."

When this bill was filed complainant was in possession of the property in question, and had obtained a temporary injunction restraining defendant from enforcing, or attempting to enforce, the contract in question; the record shows that this injunction was in force February 27, 1912, a motion for its dissolution having been denied, and there is nothing in the record to indicate it was not in force until final decree. We are constrained to assume that this decree must be reviewed and the case decided on the testimony and record before the trial court at the hearing and when the decree was made. If there are subsequent events, which in any aspect of the case are competent to consider, they should have been presented to the trial court in supplemental proceedings.

In her bill complainant alleges the false representations by defendant and her agent to be that the rooming house was bringing in a steady income from the roomers of $160 to $175 per month; that all the rooms were occupied by permanent roomers; that all the furniture was in good repair; that the house contained no vermin; that there was a change of linen and spreads for all the beds; that defendant's reason for selling was poor health; and that the house could be rented for $55 per month. Whereas in truth and in fact the house was then bringing in only from $50 to $60 per

month; and only three rooms were occupied by five roomers; that complainant was required to pay $60 per month rent; that much of the furniture was old and out of repair, and it was impossible to use it at all; that there was not a change of linen and spreads nor the necessary comfortables for each bed in the house; that said defendant had substituted inferior and scant linen and bedding and worn-out and broken furniture for some good beds in the house at the time of the purchase; that the house was infested with bugs and rats; that defendant was not giving up the business because of poor health, but was, had been, and still is engaged in the business of starting rooming houses, furnishing them with old, second-hand furniture bought at auction and special bargain sales, and disposing of the same at great advantage to herself.

While there is no allegation in the bill of any representations made by defendant as to the value of the furniture sold, it is alleged that an expert furniture man has fairly valued it at $343, and she has therefore already paid nearly twice as much as it is worth.

Defendant's answer admits (and reiterates as true): That she represented the house was bringing from $160 to $175 per month when sold; that she was paying $55 per month rental for the house; that the furniture was in good condition; that there was a change of linen for all the beds, but not of spreads; avers that the unoccupied rooms in the house were brought to the attention of complainant; denies that she agreed to get the house for complainant for $55 rental; avers that the inventory attached to the bill of sale was made at the time of the sale in complainant's presence and complainant had knowledge of every item in it; denies that the house contained, or that she was ever bothered with, bed bugs or other vermin; avers that she was at the time of the sale contemplating an operation in Chicago, and afterwards underwent such operation, paying therefor nearly all

the $400 she received from the sale of her furniture in this transaction; denies she purchased the furniture at auction sales, or that she was in the business of starting rooming houses to sell; avers that part of the consideration for the $1,000 provided for in the contract was surrendering the lease and possession of the rooming house for which she had a three-year lease, together with the good will of the business which she had established there; that the price to be paid was a very reasonable amount for the property, possession, and good will, and that all negotiations were open and aboveboard, without fraud or misrepresentation, complainant being taken through the house and shown the property, and fully satisfying herself as to the amount and quality of the same, and all surrounding conditions; and by cross-bill asks affirmative relief from the court to enable her to collect the amount yet unpaid on said contract.

It is shown that the premises in question were in charge of the Hannan Real Estate Agency, a firm of long standing in the city of Detroit, which had, in connection with its business of buying and selling, a rental department. Defendant had rented the house from this agency, and subsequently listed it there for sale at a price of $1,500 or $1,600; the selling of rooming houses, as testified by an experienced salesman of the firm, including the furniture and other personal property belonging to the tenant, the good will, lease, and right of possession all entering into the deal. The agency advertised this rooming house in the public press in connection with other property it had for sale, and complainant, who had been considering the purchase of a rooming house and looking at different propositions throughout the city, seeing the Hannan advertisement in the papers, visited the office and made inquiry. This property was talked over with a representative of the agency, and, complainant being

favorably impressed by its location, the parties to this contract were brought together.

Complainant and her sister were escorted by the sales agent of the real estate firm to the house. Negotiations resulted in an agreement of purchase and sale for $1,000, followed by complainant making a payment of $500 on the contract, which was drawn in duplicate, and signed by the parties, each receiving a copy. The rental department of the agency looked after the transfer of the lease, taking up that of Mrs. Burns and issuing a new one to complainant for $60 a month, the rent being increased $5 per month because of changes which had been demanded, an archway being put in, bathtub, and some other improvements, at whose request is a matter in dispute. Complainant took possession of the premises on the 2d day of September, 1911. After taking possession of the property complainant defaulted in her contract. It is claimed she did so because she had been deceived and defrauded in the deal, and when proceedings to enforce payment on the contract were threatened by defendant's agent she filed this bill.

It is stated in the brief of complainant's counsel that one of the grounds for asking extension of time in which to appeal this case was:

"No opinion of the court filed giving any reasons for the decree of the court, as required by law."

Counsel says in said brief:

"With the decision of the circuit court there is no law upon the question in this case. The learned court is simply wrong in his conclusion upon the facts. That an infamous fraud has been perpetrated upon this complainant, I submit, cannot be gainsaid upon this record. * * * She appeals to a court of chancery for relief and proves her case, and is turned from out thereof, because the court thinks the representations are merely expressions of opinion and the volume of trade is a personal asset, upon which no relief can be granted; surely this cannot be the law. This court

knows better. This decision seems to be the result of an unargued case."

The printed record does not disclose when, if ever, the pleadings, opinion, and decree found therein were filed, but whatever presumptions as to filing are permissible would apply with equal force to all. This record contains an opinion of the trial judge, purporting to be over his signature, "giving reasons for the decree of the court." In our view of the law applicable to this case it is not necessary to review the reasoning of the opinion further than to note, in passing, that the record discloses testimony to support the conclusions reached by the trial court in his discussion of the facts, and whether or not complainant "proves her case," and satisfactorily shows that "an infamous fraud has been perpetrated upon her," is a question upon which honest minds might differ. This result was reached in said opinion:

"I do not believe that such testimony has been adduced in this case as to warrant the court in doing anything except entering a decree dismissing the bill. As to the prayer of the cross-bill, I do not think the court should take cognizance of the prayer for relief. There is an adequate remedy at law"—

in harmony with which a formal decree was signed and entered.

While it is recognized as a general rule that chancery and law courts have, in this State, concurrent jurisdiction in case of fraud, it is now well settled that false representations are a basis for equity jurisdiction, only in those cases where relief cannot be obtained in proceedings at law. *Smith* v. *Walker*, 57 Mich. 456 (22 N. W. 267, 24 N. W. 830, 26 N. W. 783) ; *Mack* v. *Village of Frankfort*, 123 Mich. 421 (82 N. W. 209), and numerous cases there cited.

"Relief will be denied to a party who seeks the aid of a court of equity against pending or threatened proceedings at law, where it appears that the matters

relied upon are such as if established would constitute a defense in the law action, and where the complainant's right will be fully protected by a successful defense; that is, where no wrong is threatened beyond the assertion of the legal demand, open as it is to such defense." 16 Cyc. p. 57.

The fraud alleged in this case relates to a contract for the sale of personal property. The relief asked is a money judgment, or, as an alternative, that the court make a new contract for the parties and decree that defendant give an unconditional bill of sale of the chattels for the money already paid. Neither courts of law or equity can make contracts for litigants. Their powers and scope of action, when called upon to adjudicate between contracting parties, are confined to interpreting contracts the parties have made, awarding money damages, cancellation, or specific performance of such contracts. Complainant was in possession of the property at the time of filing her bill, and obtained an injunction restraining interference with her possession pending this litigation. The fraud she alleged was available as a defense in proceedings against her, or in an action by her for damages. We do not think this is a case for equity jurisdiction. As was said in *Teft* v. *Stewart,* 31 Mich. 367:

"If the right contended for and carried out by the decree can be maintained, no reason is perceived why, upon the same principle, a party claiming to have been cheated in a horse trade, or in a purchase of any chattels where the amount is sufficient, may not at his election proceed to sue in chancery for damages, and preclude an investigation before a jury."

In the case at bar the evidence is in sharp conflict on many of the material questions of fact, and there is opportunity for honest argument in favor of the claims of each of the contending parties, making a case particularly adapted to, and well suited for, investigation

175 MICH.—30.

by a jury, whose peculiar and special function is to decide issues of fact with the parties and their witnesses personally present, to be seen and heard and their truthfulness investigated under circumstances most favorable for a full understanding.

The decree of the circuit court dismissing complainant's bill is affirmed, with costs, but must be construed, or modified, to be without prejudice to any proceedings at law complainant may desire to take, or to any defense she may desire to make in any proceedings which may be instituted against her by defendant.

MOORE, McALVAY, BROOKE, KUHN, STONE, OSTRANDER, and BIRD, JJ., concurred.