(77 South. 286)

No. 22822.

CITY OF SHREVEPORT v. SULLIVAN.

(Nov. 26, 1917. Rehearing Denied Jan. 3, 1918.)

*(Syllabus by the Court.)*

CONSTITUTIONAL LAW &⇒70(3) — JUDICIAL DEPARTMENT—POLICE POWER—ANNULMENT OF STATUTE OR ORDINANCE.

It is not the province of the courts to take issue with the lawmakers as to the wisdom or necessity of a statute or ordinance enacted ostensibly in the exercise of the police power. The authority of the courts to annul laws or ordinances that are claimed to have been enacted in the exercise of the police power is confined to enactments that have no real or reasonable relation to public safety, public health, or morals—abuses of the police power, under pretense of promoting public safety, health, or morals.

Appeal from City Court of Shreveport; D. B. Samuel, Judge.

W. A. Sullivan was convicted of violating an ordinance of the City of Shreveport, and he appeals. Affirmed.

Wise, Randolph, Rendall & Freyer, of Shreveport, for appellant. L. C. Butler, City Atty., and John F. Phillips, Asst. City Atty., both of Shreveport, for appellee.

O'NIELL, J. ⁣ The defendant appeals from a judgment convicting him of violating an ordinance of the city of Shreveport, requiring owners and superintendents of street railways to have two men, a conductor and a motorman, on each car in operation.

The defense is that the application of the ordinance to certain improved cars, known as safety cars, or one-man cars, recently installed on one of the lines of the railway company (called the Allendale line), is an unnecessary, unreasonable, arbitrary imposition upon the railway company, and is therefore a taking of the company's property without due process of law. The issue is tendered by way of a bill of exception taken to the overruling of a motion to quash the affidavit on which the prosecution was founded.

The city claims that the ordinance was enacted in the exercise of its police power; and the only question presented for decision is whether *its application to the improved safety cars is a legitimate exercise of that power.*

It is conceded by the learned counsel for the appellant that the enactment of the ordinance was a proper exercise of the police power when there were no other cars in

Shreveport—no others to which the law could apply—than the cars that required two men, a conductor and a motorman, to operate them safely.

The evidence taken on the trial of the motion to quash, attached to the bill of exception, shows that the new cars on the Allendale line are so constructed that the motorman must be constantly engaged in a conscious effort to keep them going; that they are equipped with such safety devices that, if the motorman neglects his duty for an instant, the electric current is automatically cut off, and automatically the emergency brake is applied, the rails are sanded, the car stops, the doors open, and the steps drop into place for the exit of passengers. As the door opens only at the forward end, on the right side of the car, the motorman can perform the duties that are usually performed by a conductor when the car is stopped; that is, receive fares, make change, issue transfers, see that passengers get off and on safely, etc.

We conclude, from the testimony of the very competent railway experts who testified in this case, that the improved cars can be conducted and operated more safely by one man than the older cars, to which the ordinance was designed to apply, could be conducted and operated by two men. But it does not follow that the so-called safety cars could not be conducted and operated with even more safety by two men than the same cars can be conducted and operated by one man doing the work of two men. Some of the witnesses for the defendant expressed the opinion that the greater safety of the so-called one-man cars is largely due to confining the responsibilities, along with the duties, of the conductor and motorman to one man. They reasoned that a motorman standing at the only open door of a car where he can observe for himself whether the passengers are safely on or off the car, and realizing that all of the responsibility for the safety of the passengers rests upon him, can perform the duties of both conductor and motorman better than he could perform only the duties of a motorman if the responsibilities were divided, and he had to depend upon the conductor for signals and orders. But that argument seems to go too far. It gives no credit to the improved safety appliances of the new cars, and implies that the older cars could be conducted and operated more safely by one man than by two men if the passengers were required to enter and leave the cars through the front door beside the motorman.

We assume that the members of the city council were of the opinion that, although the improved cars can be operated with more safety by one man than the older cars could be operated by two men, nevertheless the improved cars can be operated with even more safety and convenience to the passengers and the general public by two men than by one man. It is not our province to take issue with the city council as to the wisdom of the ordinance, or the necessity of its application to the newfashioned cars, when it appears that the enforcement of the ordinance may reasonably serve the purpose of public safety, for which it was enacted. It is the duty of the courts to enforce police regulations enacted in good faith and with appropriate or reasonable regard for the protection or safety of the public. The authority of the courts to annul laws or ordinances that are claimed to have been enacted in the exercise of the police power is confined to enactments that have no real or reasonable relation to public safety or public health or morals—abuses of the police power under pretense of promoting public safety, health or morals. The enforcement of the ordinance in contest does not appear to be arbitrary, unreasonable, or abusive of the police power of the municipality.

The judgment appealed from is affirmed.

LECHE, J., takes no part, not having heard the argument.