DES MOINES CITY RAILWAY COMPANY, Appellant, v. AMALGA-
MATED ASSOCIATION OF STREET & ELECTRIC RAILWAY
EMPLOYEES OF AMERICA, DIVISION 441, OF
DES MOINES, et al., Appellees.

**EQUITY: Jurisdiction—Remedy at Law.** Equity will not assume jurisdiction to declare illegal and to enjoin the enforcement of a contract between an employer and a local labor union on behalf of the employees when the controversy may readily be presented in a law action. So held where the contract required the employer to retain certain sums from the pay of each employee and to pay the same to the local union as members' dues, it appearing that some of the employees had objected to the retention of said sums.

**TRADE UNIONS: Contracts—Legality.** A contract between a street railway company and a local labor union representing the employees

will not be decreed illegal by a court of equity on the ground that the contract requires the company, against public policy, to maintain two employees on each car, (1) when the city has not exercised its undoubted power over such subject-matter, (2) when the city is not a party to the action, and (3) when the object of the action seems to be to obtain a declaratory decree only.

**TRADE UNIONS: Contracts—Conflict with International Union.** Equity
3 will not assume jurisdiction to declare illegal a contract between an employer and a local labor union on the ground that the contract is violative of the constitution of the international union to which the local union is subject, when the international union is not a party to the action and is making no complaint.

**TRADE UNIONS: Contracts—Unionizing Industry—Legality.** Equity
4 will not assume to pass upon the public policy of a contract between an employer and a local union on the ground that the contract unionizes an entire industry, when no person is complaining that he is deprived of the right to freely dispose of his labor.

**Headnote 1:** 9 C. J. p. 1162; 21 C. J. pp. 36, 68; 32 C. J. p. 227. **Headnote 2:** 1 C. J. pp. 973, 974; 33 C. J. p. 1097; 24 Cyc. pp. 819 (Anno.), 830 (Anno.); 36 Cyc. pp. 1445, 1447, 1457. **Headnote 3:** 24 Cyc. p. 830 (Anno.) **Headnote 4:** 24 Cyc. p. 830 (Anno.)

**Headnote 1:** 10 R. C. L. 271 *et seq.*

*Appeal from Polk District Court.*—JOSEPH E. MEYER, Judge.

APRIL 7, 1927.

REHEARING DENIED DECEMBER 17, 1927.

An action to declare void a contract existing between appellant and the appellees, and to enjoin appellees from attempting to enforce the same. The district court dismissed plaintiff's petition.—*Affirmed.*

*Sargent, Gamble & Read,* for appellant.

*C. C. Putnam* and *Paul Williams,* for appellees.

ALBERT, J.—The Des Moines City Railway Company is a corporation organized under the laws of the state of Iowa. The Amalgamated Association of Street & Electric Railway Employees of America is an unincorporated association, interna-

tional in its character. It has what is called a "constitution" and certain by-laws. This association consists of certain officers, and its membership is constituted of representative members from local divisions in various parts of the United States and Canada, which local divisions are also unincorporated. The local divisions or units receive from the international association what is called a "charter," which in fact amounts to a certificate of membership. Each local organization has its quota of officers and certain rules or by-laws for its government, and is generally spoken of as a "local division," the principal officers of which consist of a president, a recording and financial secretary, and a treasurer. The general management of the local association is intrusted to an executive board of not less than five members, of which the president is chairman.

The defendant local division was organized sometime in 1906, and afterward became affiliated with the international association and received a charter as a member thereof. The exact status of this local division with reference to the international will be given further attention later. The street car company will be referred to herein as the "company," and appellees as the "association."

On the 1st day of September, 1915, the company and the association entered into a written memorandum of agreement, signed by the president of the company and the president and secretary of the local association. Generally speaking, this contract covers, in a large measure, the relations between the company and the association, and provides generally that all employees of the company must be members of the association, or must become such within 30 days after their employment, and that, in case the association suspends any of its members, the company will, on written notice thereof from the proper officer, suspend such employee, without pay; that any member of the association who interferes with or disturbs the negotiations between the company and the association, or in any way interferes with or disturbs the service, contrary to the conditions of the agreement, shall be dismissed from the service; also, that the company will collect the "check-off," and pay the same over to the association, and, in event that an employee leaves the service of the company, said company shall, on proper notice from the association, make the proper deductions from the pay of the one

thus discharged. The company agrees to recognize and treat with the duly authorized representatives of the association to adjust all questions and differences that may arise, and agrees that any of the members of the association off duty on official business shall be allowed due leave of absence, and be reinstated on return. The agreement further provides that, should one of the employees accept an official position with the company for a longer time than three months, he relinquishes all rights to seniority in his line of work; provides certain regulations as to wages for employees who have been out of the service, and are re-employed; makes certain provisions as to the rights of seniority, and many and numerous provisions as to the wages of employees, and also as to the hours of labor; provides that all employees, members of the association, shall comply with all the rules and regulations made and adopted by the company that do not conflict with the terms of the agreement; provides method of amicable adjustment of grievances; provides that, where differences arise between the company and the association that cannot be amicably adjusted, the matter should be submitted to arbitration, and the manner and method thereof is set out; provides for changes of certain parts of the agreement, and that the same shall continue in force and be binding on the respective parties until March 1, 1940, unless otherwise changed by mutual consent of the parties thereto; provides that, on proper notice by either party, certain parts of the contract were to be opened for consideration of any change or changes after March 1, 1919, and the wage scale was to be opened, from that date on, at any two-year period, on a prior notice of thirty days.

The company further reserves the right to discharge or discipline its employees on sufficient cause shown, and also the right to fix the number of cars, their time of running, and the length of time they shall be on the street.

The contract covers many other matters which might be the cause of differences between the parties. Any special sections of this agreement about which contention arises will be more specifically set out hereafter.

From the date of said contract to the time of the commencement of this proceeding, the company and the association operated under this contract, except that from time to time, by consent of the parties, certain modifications were made, none of

which are material to the matters involved herein.  On the 2d day of October, 1915, an ordinance was passed by the city of Des Moines, granting a franchise to the street car company.  This was submitted and approved at a general election on November 29, 1915.  On December 22d, the city council re-passed the ordinance, and the company filed its acceptance on January 26, 1916. In June, 1925, some of the members of this association, employees of the company, demanded that they be paid their wages in full, without deduction of the check-off; and further complaint was made, on the part of the association, that the company had failed to discharge one of its employees, on proper request by the association.  Thereupon this action was instituted, on the 2d day of July, 1925, by the company against the defendant association and the individual members thereof, alleging that the contract above referred to was illegal and void and of no effect, on certain grounds hereinafter referred to; asking an injunction against the appellee association and all of its members, enjoining them from further demanding that appellant pay the check-off, which was then in the hands of the company, amounting to $1,548.66; asking that the contract or agreement be declared null and void and of no force and effect whatever, and that appellees be permanently enjoined from attempting to enforce the same, or any of the terms and conditions thereof, and that, if said contract be adjudged to be valid, the ambiguities be construed, and that the same be reformed, to express the true intent and meaning of the parties.

The claim of appellant company is that this contract is void, for the following reasons:

First.  Because it is contrary to and made in violation of the constitution and by-laws of the so-called "international association," and the local association had no authority whatever to make the same.

Second.  Because, in violation of law, the contract unionizes an entire industry, and is, therefore, against public policy.

Third.  That it is void in so far as it requires the company to have a motorman and a conductor on each car while in operation.

Fourth.  That, so far as the contract is executory, it is without consideration, and cognate thereto is the assertion that the

contract is essentially unilateral, and is unenforcible because of· lack of mutuality.

Fifth. That the check-off clause in the contract is ambiguous and uncertain.

One· of the provisions of the·contract between the parties reads as follows:

"This company agrees to check off all dues, initiation fees and assessments from the members who are employees of the company when desired, and the association agrees to furnish a statement of the amount to be deducted from the pay of each member."

It is insisted that this provision in the contract is invalid for uncertainty, and that a number of the members of the association have notified the company that they refused to allow the check-off, and demand their pay in full; and the company says that, by reason of this, it is put in a position in which it·is liable to be·required to twice pay the amount of the check-off in such· cases.

It is true that the evidence shows that certain of the employees of the company did so notify the company, but such employees are not specifically named as parties defendant herein.

1. EQUITY: jurisdiction: remedy at law.

Further than this, such fact does not call for equitable intervention. In event that the company should be sued by ·such employees in a law action, there is nothing to prevent the company's impleading the association in such a case, and adjudicating all such rights in · a law action; and where this condition of affairs exists, equity will not assume jurisdiction. In other words, the company has a clear, speedy, and adequate remedy at law ·for the very thing about which they complain. Hence equity will not assume jurisdiction. Where. several persons hold tracts of land under different titles, and there is no privity between them, but a person brings an ejectment suit against each of them, plaintiff's cause of·action in each depending on the same state of facts and principles of law, there is no·ground for equity jurisdiction to· prevent a multiplicity of suits. *Turner v. City of Mobile,* 135 Ala. 73 (33 So. 132).

Where plaintiff brought an action on a. note and contract to purchase stock which she claimed was procured by fraud, and she would be entitled to depend upon this in a suit on the note

and contract, equity is without power to grant her relief. *Bronson v. Cook*, 247 Fed. 601. Where the party has a complete defense at law to "a purely legal demand," he cannot resort to a court of equity for relief. *Insurance Co. v. Bailey*, 13 Wall. 616 (20 L. Ed. 501). Where the defense at law, to a suit brought on municipal bonds, is perfect and complete, the municipality cannot maintain a suit in equity to enjoin their collection and to obtain their cancellation. *Grand Chute v. Winegar*, 15 Wall. 373 (21 L. Ed. 174). A court of equity ought not to interfere upon the grounds of danger of multiplicity of suits by the same person against the complainant for causes of action arising out of the same facts and legal principles, unless it is clearly necessary to protect the complainant against continued and vexatious litigation. *Boise Artesian H. & C. W. Co. v. Boise City*, 213 U. S. 276 (53 L. Ed. 796). Nor can there be any question that, in a proper case, a court of equity has full power to order the cancellation of bonds or other written instruments. But it is not a matter of absolute right. It is a power which the court will exercise with care, and only in accordance with what it believes to be proper and right under the circumstances. It certainly will not exercise it when the legal remedy, either affirmative or defensive, would be adequate, certain, or complete. *Farmington Village Corp. v. Sandy River Nat. Bank*, 85 Me. 46 (26 Atl. 965). The plain, adequate, and complete relief which a court of law can afford, need not be the same kind of relief that a court of equity could give, in order that the latter should thus be in a position where it cannot take jurisdiction. *Shenehon v. Illinois Life Ins. Co.*, 100 Ill. App. 281.

The cancellation of an option contract alleged to have been procured by fraud was refused upon the ground that the complainants had an adequate remedy at law in an action to recover the amount paid out by them under such contract. *Buck v. Ward*, 97 Va. 209 (33 S. E. 513). Equity will not exercise its concurrent jurisdiction in case of fraud with courts of law, except in cases where relief cannot be obtained at law. *Heffernan v. Burns*, 175 Mich. 457 (141 N. W. 529). The general rule, as laid down in 21 Corpus Juris 68, Section 42, is that:

"Relief will be denied to a person who seeks the aid of a court of equity against pending or threatened proceedings at law, where it appears that the matters relied upon are such as, if

established, would constitute a defense in the law action, and where the plaintiff's rights will be fully protected by a successful defense: that is, where no wrong is threatened beyond the assertion of the legal demand, open as it is to such defense."

Numerous cases are there cited, supporting the text.

In *Smith v. Short,* 11 Iowa 523, this court said:

"For aught that is shown, every matter stated in the bill can be made as fully available in answer and defense, to the action at law, as by an appeal to equity. Under such circumstances, parties should be left to their legal remedies and defenses."

In *Smith v. Griswold,* 95 Iowa 684, there was a motion to transfer the case to equity, on the grounds that reformation of the instrument sued on was asked. We there said:

"The sufficiency of the facts pleaded as a defense was not questioned, and, if they were established, the law forum gave the same relief as was sought in equity. The facts that would reform the instrument would defeat a recovery on it. Under such circumstances, equity has no jurisdiction. This is elementary" (citing *City of Council Bluffs v. Stewart,* 51 Iowa 385; *Dubuque & S. C. R. Co. v. Cedar Falls & M. R. Co.,* 76 Iowa 702).

In the case of *City of Council Bluffs v. Stewart,* supra, it was held that, where it is not made to appear that the injury would be irreparable, or that adequate compensation could not be obtained therefor, equity would not assume jurisdiction.

In *Dubuque & S. C. R. Co. v. Cedar Falls & M. R. Co.,* supra, the plaintiff railroad company had leased the defendant's railroad for a term of forty years from January 1, 1867. They carried out the terms of this lease, except the payment of a few of the last installments of rent. The lessee then brought an action for a cancellation of the contract, on the ground that its president and directors, who executed the lease, were adversely interested; that the rent agreed to be paid was excessive; that the contract was burdensome and disadvantageous to it; that the officers had no power to bind it by the contract; and that their act was a fraud upon it. They asked a temporary injunction restraining defendant from instituting or prosecuting any action at law for the rent. The question discussed was whether the contract could be canceled, upon the facts alleged. The court said:

"But the facts relied upon are available in defense of an action at law on the contract for the enforcement of the rent. It would be a good defense in such an action that the contract was voidable because of fraud in its inception, and that the one against whom it was sought to be enforced had, upon discovery of the fraud, sought to rescind by returning or offering to return what he had received under it. The institution or prosecution of a suit at law, then, would not produce any great or irreparable injury to plaintiff; nor would it be a violation of his right relating to the subject of the action, nor render ineffectual the judgment he may recover in it. The case, upon its facts, is within the holding of this court in *Smith v. Short*, 11 Iowa 523. It is not governed by *Stewart v. Johnston*, 44 Iowa 435, *Brigham v. White*, Id. 677, and the other cases in this court which hold that, when fraud is the gravamen of the petition, the injunction will not be dissolved upon a mere denial of the allegations of fraud, but will be continued until the final determination of the issue. * * * Courts of equity will not interfere to restrain an action at law, when the defense may be used in the action of law itself, without resort to equity."

In *Home Sav. & Tr. Co. v. Hicks*, 116 Iowa 114, it is said:

"The almost universal rule is that relief by injunction will not be granted when the matter presented as ground for the writ may be urged as a defense in the action at law."

The doctrine of *Smith v. Short*, supra, was reaffirmed and made the basis of the ruling in the case of *Biermann v. Guaranty Mut. Life Ins. Co.*, 142 Iowa 341. This doctrine was also reaffirmed in the case of *McIntosh v. Brown*, 159 Iowa 41; and in *Lynch v. Schemmel*, 176 Iowa 499, this doctrine is fully elaborated.

The doctrine of these cases establishes the general rule that equity will not assume jurisdiction when the matter of which complaint is made is available as a defense in an action at law. This disposes of the question of the check-off, as well as the lack of mutuality of the contract.

It is next insisted that the part of the agreement between the company and the association with reference to the number of employees to be used on each passenger car is void, as against public policy. Section 11 of this contract in part reads as follows:

"The company agrees that each motor passenger car shall be in the control of a motorman and a conductor," etc.

To the better understanding of the contention of the company in this respect it must further be said that, under the franchise ordinance of the company, among other things it is provided that the fare charged to the traveling public by this company shall be based upon the net income of the company, after deducting fixed charges and certain other matters provided for in the ordinance, and it is urged that, by the use of what is referred to as the "one-man car," the expenses of the company would be much reduced, and that this would eventually inure to the benefit of the traveling public. It is therefore urged that this question is impressed with a public interest, and that, therefore, this clause of the contract should be held invalid.

*2. TRADE UNIONS: contracts: legality.*

That the city in the first instance has the right and power to designate whether or not these street cars shall be operated by one man or two or more men has been put beyond the realm of dispute by the following cases: *Sullivan v. City of Shreveport,* 251 U. S. 169 (64 L. Ed. 205); *City of Shreveport v. Sullivan,* 142 La. 573 (77 So. 286); *South Covington & C. St. R. Co. v. Berry,* 93 Ky. 43 (18 S. W. 1026); *State, The Trenton Horse R. Co. v. City of Trenton,* 53 N. J. Law 132 (20 Atl. 1076); *State ex rel. Columbia Elec. St. R. L. & P. Co. v. Sloan,* 48 S. C. 21 (25 S. E. 898); *City of Schenectady v. Schenectady R. Co.,* 118 Misc. Rep. 676 (194 N. Y. Supp. 375); *Brooklyn Crosstown R. Co. v. City of Brooklyn,* 37 Hun (N. Y.) 413; *City of Chicago v. Chicago & O. P. Elevated R. Co.,* 250 Ill. 486 (95 N. E. 456). As side lights on this same proposition, see *Minneapolis St. R. Co. v. City of Minneapolis,* 189 Fed. 445; *Ranken v. St. Louis & B. S. R. Co.,* 98 Fed. 479; *State ex rel. City of St. Paul v. St. Paul C. R. Co.,* 117 Minn. 316 (135 N. W. 976); *City of Milwaukee v. Railroad Comm.,* 182 Wis. 498 (196 N. W. 853).

It is thus settled that the city, in the exercise of its police power, has the absolute right to regulate this question by ordinance, and in the instant case the city has reserved to itself this power, as shown by Section 27 of the franchise ordinance of 1921, which reads as follows:

"The enumeration herein of special requirements and specific regulations shall not be taken or held to imply the relin-

quishment by the said city of its power to make other reasonable requirements or regulations, and the said city hereby expressly reserves the right to make all regulations which may be necessary to secure in the most ample manner the safety, welfare and accommodation of the public, including, among other things, the right to pass and enforce ordinances to protect the public from danger and inconvenience in the management and operation of street railways and interurban railways throughout the said city, and the right as herein provided, to make and enforce all such regulations as shall be reasonably necessary to secure adequate and sufficient street railway and interurban railway accommodations for the people and insure their comfort and convenience, and to provide first-class street car service as contemplated in this ordinance.''

In the instant case the city has not exercised such power. So long as the city has not exercised such power, we know of no law which will prevent the company and the association from making such contracts relative to this matter as they may see fit. The general public is not a party to the action. Its interests are presumed to be looked after and taken care of by the city, but the city is not a party to this action. So it must follow that the question of public interest is not to be considered as an element of this case. Further than this, the question is not rightfully before this court; no party to the action is seeking to base recovery on this clause of the contract; neither is any party to the action seeking to defend the action by reason of this clause of the contract. If the time arrives that either party shall attempt to bottom an affirmative cause of action on this provision of the contract and in due course the question reaches us, we will then give this matter the attention it deserves, but in the instant case, there is nothing before us demanding further consideration of this proposition, and there is nothing which would warrant the intervention of a court of equity.

It is insisted that the contract is in violation of the constitution of the international association. The section thereof with which the contract is said to conflict reads as follows:

''The only agreements that are accepted as binding upon this association are those that are in writing specifying the association, giving the division in number, and legally signed by the

3. Trade Unions: contracts: conflict with international union.  "officers of the same. It shall be the aim of the local divisions to make short-term contracts, and no contract of any kind shall be entered into to exceed a period of three years by any division of this association, and where the continuous contract form is used, it shall be so provided as to be opened every year, if possible, and in no case shall it exceed the provision of three years without being opened up for revision."

By reference to the contract herein, it will be noticed that this contract ran for a period of approximately 25 years from September, 1915. It is because of the length of time the contract was made to run that it is said to violate the constitution of the international association. It is to be noted in this case that the international is not made a party to this action, the action being wholly against the local and its members, and there is no attempt to hold the international in any way responsible under the provisions of the contract.

The constitution, rules, and by-laws of a voluntary unincorporated association constitute a contract between the association and its members which governs the rights and duties of the members between themselves and in their relation to the association with reference to all matters affecting its internal government and the management of its affairs, and are measured by the terms thereof. *Dingwall v. Amalgamated Assn.*, 4 Cal. App. 565 (88 Pac. 597); *State Council v. Enterprise Council*, 75 N. J. Eq. 245 (72 Atl. 19); *Kalbitzer v. Goodhue*, 52 W. Va. 435 (44 S. E. 264); *Brownfield v. Simon*, 94 Misc. Rep. 720 (158 N. Y. Supp. 187); *Strauss v. Thoman*, 60 Misc. Rep. 72 (111 N. Y. Supp. 745); *Gaines v. Farmer*, 55 Tex. Civ. App. 601 (119 S. W. 874).

It would seem to follow from this doctrine that the question of whether or not the local association has complied with the requirements of the constitution and by-laws of the international is wholly a question between them, and so long as no complaint is being made by the international against the local for noncompliance, it does not lie with third parties to raise such a question. We see nothing in this point that would call upon the court to exercise its equity jurisdiction.

It is insisted further that the contract is void, as against public policy, because it, in effect, unionizes an entire industry. No person is here complaining that he is deprived of his right to

**4. TRADE UNIONS: contracts: unionizing industry: legality.** freely dispose of his labor, and nothing in the record shows that any person is deprived of such right. All the cases cited by appellant on this proposition are cases in which some person who was so deprived of his right was the complainant. More than this, the evidence in the case shows that there are interurban lines, equipped with electricity, operated in the city of Des Moines, the employees of which are required to possess the same or similar skill or experience as the employees of appellant. If it is true that the contract contravenes public policy, as between the parties thereto, both are *in pari delicto*, and the law will leave them where it finds them. 2 Elliott on Contracts, Sections 1064 and 1094, and cases there cited.

We find nothing, therefore, in the case which requires the intervention of a court of equity, so far as this question is concerned.

The sum total of this holding is that the international association is not a party to this action, and that what the provisions of its constitution and by-laws may be, and whether the contract was made in violation thereof, are matters wholly between the local and the international association; that, as to the contract's being against public policy because it unionizes an entire industry, and also because it requires a motorman and a conductor on each car while in operation, these questions are not properly before us, as the matters pleaded do not warrant the intervention of a court of equity; that the attack on the contract for want of consideration, lack of mutuality, and the check-off are each and all matters which are available as a defense in a suit by an employee for the recovery of his wage, and therefore not cognizable in equity.

The real purpose of this litigation seems to have been to obtain a declaratory judgment as to the matters involved herein. Such proceedings, while very desirable, in some cases at least, are unknown to the practice in Iowa.—*Affirmed.*

All the justices concur.