B. F. STURTEVANT CO. *v.* ADOLPH LEITELT IRON WORKS.

CORPORATIONS — FOREIGN    CORPORATIONS — LICENSES — INTERSTATE
COMMERCE.

> In an action by an unlicensed foreign corporation to re-
> cover the purchase price of a ventilating system, which
> was to be installed by the seller, under the agreement,
> evidence *held*, insufficient to establish that the apparatus
> had such intrinsic or peculiar quality or inherent com-
> plexity as rendered it necessary that the manufacturer
> agree to install it in order to effect sales generally, so
> that the contract was not within the exception of section
> 8, of Act No. 310, Pub. Acts 1907, as amended (2 Comp.
> Laws 1915, § 9070), that the provisions of the act provid-
> ing as to licensing of foreign corporations as a pre-
> requisite to doing business within the State should not be
> construed as prohibiting any sale of goods or merchan-
> dise which would be protected as interstate commerce.

Error to Kent; Brown, J. Submitted April 9, 1917.
(Docket No. 76.)    Decided May 31, 1917.

Assumpsit by the B. F. Sturtevant Company against
the Adolph Leitelt Iron Works for the purchase price
of a school ventilating system. Judgment for defend-
ant. Plaintiff brings error. Affirmed.

*Henry B. Graves,* for appellant.

*H. Monroe Dunham,* for appellee.

On May 8, 1914, plaintiff entered into a contract
with defendant for the sale of a ventilating system
to be installed in the South High School in the city
of Grand Rapids. This contract was breached by the
defendant, and plaintiff brought its action to recover
damages arising out of said breach. Defendant filed
a plea of the general issue, giving notice under said
plea that it would insist in its defenses that the plain-

tiff, at the time said contract was entered into, had not complied with the requirements of the statute of the State of Michigan permitting and authorizing plaintiff to carry on business within the State. It is conceded upon the record that plaintiff was never licensed to do business in Michigan under Act No. 310, Pub. Acts 1907, as amended by Act No. 3, Extra Session 1907, and Act No. 266, Pub. Acts 1911, and Act No. 277, Pub. Acts 1913 (2 Comp. Laws 1915, §§ 9063-9072). The case was tried by the court without a jury. At the conclusion of the plaintiff's case a motion was made on behalf of the defendant for a directed verdict, upon the sole ground that plaintiff, a foreign corporation, at the time the contract was made was engaged in intrastate commerce without being legally licensed under the laws of the State of Michigan in that behalf. This motion was granted, and the court made the following findings of fact and law:

"FINDINGS OF FACT AND LAW.

("Filed July 25, 1916.)

"(1) That on the 8th day of May, 1914, the plaintiff was a foreign corporation, to wit, a Massachusetts corporation, and on said day entered into a contract with the defendant to furnish, deliver, and erect on foundations to be provided by the plaintiff all the fan apparatus, as called for in the specifications drawn up by the engineers and architects employed by the board of education in erecting the South High School Building, in the city of Grand Rapids, Mich.

"(2) That the said plaintiff at the time of making said contract, on the 8th day of May, 1914, and at all other times before and since said date, and at the time of making said contract, did not hold an unrevoked certificate from the secretary of State, permitting and authorizing plaintiff to do business within the State of Michigan, as required by the statutes of the State of Michigan.

"(3) That the defendants were solicited by plaintiff to enter into said contract, and that plaintiff first

proposed and offered to sell to defendant the fan apparatus and material to be furnished in said contract, to be erected and installed by the defendant.

"(4) That the defendant did not care to purchase said apparatus and install and erect the same, and so this contract was entered into on the 8th day of May, 1914, and the installing and erecting of this apparatus had nothing to do, or was not a requisite to the sale of said apparatus.

"(5) That the apparatus called for in said contract to be furnished, delivered, and erected by the plaintiff could have been installed and erected by any competent engineer familiar with the installation and erecting of ventilating systems similar to the apparatus proposed to be erected by plaintiff.

"(6) That a considerable portion of the business of plaintiff is the furnishing and delivering of fan apparatus and material, such as was proposed in the contract in question, to be erected and installed by engineers and contractors other than those furnished by plaintiff.

"(7) The court finds that the installing and erecting of the apparatus in controversy in the contract relied upon by plaintiff was not an essential requisite to the sale of this apparatus, or an essential requisite to the making of this contract; and plaintiff failed to show by evidence that this apparatus could not have been installed by other mechanics or engineers than those furnished by plaintiff.

"LAW.

"(1) I, therefore, find as a matter of law, that the said plaintiff, B. F. Sturtevant Company, was a foreign corporation at the time the contract was entered into, and was without authority to do business within the State of Michigan.

"(2) I find that this contract contemplates the doing of intrastate business, and not interstate commerce.

"(3) I find that the defendant, Adolph Leitelt Iron Works, is not liable to the said plaintiff upon said contract sued upon, and that a judgment of no cause of action be entered in favor of said defendant, Adolph Leitelt Iron Works."

Plaintiff proposed amendments to the findings of both fact and law, which were refused, such refusal being followed by appropriate exceptions. The principal and controlling amendment proposed and refused is as follows:

"The contract between the plaintiff and the defendant in this case is a contract which relates solely to commerce among the several States of the United States and is within the exception described in section 8 of Act No. 310 of the Public Acts of Michigan for the year 1907 as amended by later and supplementary acts."

BROOKE, J. (*after stating the facts*). The question is not a new one in this State. It has arisen several times under contracts containing varying provisions. The latest case upon the subject is *Power Specialty Co.* v. *Michigan Power Co.*, 190 Mich. 699 (157 N. W. 408), where all the authorities are collected and discussed. That the question is not without difficulty is indicated by the fact that both parties in the case at bar rely upon *Power Specialty Co.* v. *Michigan Power Co.*, *supra.* Plaintiff's counsel defines his position as follows:

"We, therefore, contend that the undisputed testimony discloses that the engineers who drew the specifications expressly inserted a clause requiring the manufacturer to install; that such a provision is customary, because only those specially skilled in the work can do it successfully; that there are companies who make a specialty of installing such systems, but none shown to be in Michigan; that the installation was only incidental to the main contract, because only costing 4.6 per cent. thereof. Such facts were most relevant to the issue, and should have been found."

It is the claim of plaintiff that the testimony introduced on its behalf brings this case within that class of cases recognized in *Browning* v. *City of Waycross*, 233 U. S. 16 (34 Sup. Ct. 578), where a provision by the seller to install is essential to a sale "because of

some intrinsic or peculiar quality or inherent complexity of the article."

It is the claim of the defendant that the testimony, which was all introduced by the plaintiff, shows the exact converse of this proposition. Upon this point John H. Kassa, the sales engineer of the plaintiff who made the contract in controversy here, testified as follows:

"*Q.* The fact was you both tried to sell to the Leitelt Iron Works for them to install, did you not?

"*A.* Yes.

"*The Court:* What is the answer?

"*A.* That is correct.

"*Q.* And the Leitelt Iron Works did not want to take up that end of it?

"*A.* That is true.

"*Q.* By their installing, it means their assuming all responsibility of the men and any injuries that might develop to the men, etc.?

"*A.* Yes, sir.

"*Q.* Your company, if you can get a local concern to install, you desire to make a sale on that basis, if you can, do you not?

"*A.* We will if we can.

"*Q.* And if you can't do it that way, you make the sale the other way, and your company install?

"*A.* Yes."

Harry W. Paige, western manager for plaintiff, testified in part as follows:

"*Q.* State whether or not in this particular apparatus manufactured by the B. F. Sturtevant Company there is anything peculiar that requires, in order to make a sale of it, that the B. F. Sturtevant Company should erect it.

"*A.* There is; yes.

"*Q.* Explain to us in a general way in your own language, what that is and why it is.

"*A.* Well, the proper operation of the apparatus depends upon a correct installation and alignment. This is a special class of apparatus, and in this particular case the fan and the motor were being connected up

together and would have to be in alignment for correct operation. Usually the people who bid on this class of work are not familiar with the handling and lining up of such apparatus, and the manufacturer is required to at least furnish a superintendent and in most cases completely install on the foundation this portion of the apparatus.

"*Q.* In your experience in making sales in Southern Michigan, in Grand Rapids, state whether or not you find it necessary in order to make the sale to agree to install it.

"*A.* We do.

"*Q.* State whether or not it would be possible for a person who had no previous experience with the Sturtevant apparatus to install it correctly?

"*A.* Well, it is barely possible; I would not say it was impossible."

On cross-examination the same witness testified:

"*Q.* Isn't it a fact, Mr. Paige, that very often the apparatus of the Sturtevant Company is sold and delivered to the purchaser and erected by him?

"*A.* Occasionally, yes.

"*Q.* So that there is no special ability required other than good mechanical ability and good electrical ability to erect this ventilating system, is there?

"*A.* Yes; I would say there was.

"*Q.* What is it?

"*A.* Experience.

"*Q.* Mechanical ability is experience. A mechanic that has had experience in this sort of mechanical work?

"*A.* Certainly; any mechanic who has had experience in this particular sort of mechanical work can erect it.

"*Q.* One who has put in ventilating systems of other companies or who has done work of that nature would be able to follow the drawings and put up this apparatus, would he not?

"*A.* If he had been competent with the other firm, yes.

"*Q.* In other words, it is not and does not require, to make a successful job, the presence of your own mechanics and your own superintendent, does it?

"*A.* I could not answer that question without qualifying it.

"*Q.* People and customers do buy your apparatus and erect it themselves, do they not?

"*A.* Sometimes, yes.

"*Q.* And so far as you know, the operation of that apparatus, after it is erected, is just as successful as the apparatus erected by the B. F. Sturtevant Company, is it not?

"*A.* Not always.

"*Q.* Isn't it as a general rule as successfully operated as the B. F. Sturtevant apparatus that is put up by their own men?

"*A.* No, sir.

"*Q.* Did you ever have any apparatus installed by the Sturtevant Company itself that did not operate properly?

"*A.* Yes, sir. ·

"*Q.* That has also occurred with apparatus installed by other people?

"*A.* Yes, sir.

"*Q.* So that the rule works both ways, doesn't it?

"*A.* It does.

"*Q.* Do you know of any other apparatus, ventilating apparatus of your company, that has been installed in Grand Rapids by other people thàn the Sturtevant Company?

"*A.* Yes; I do.

"*Q.* Where?

"*A.* Hotel Pantlind.

"*Q.* Who installed that?

"*A.* If I recollect, Hanley-Casey Mechanical Equipment Company installed it."

Arthur W. Boylston, an engineer connected with the Nearing & Henson Company, of Wilmette, Ill., a man of considerable experience in the installation of ventilating apparatus, testified:

"*Q.* State whether or not as the result of your experience it would be necessary in a job of this size, in order to do the work properly, that the apparatus should be installed by some person or persons who are familiar with installing ventilating apparatus.

"*A.* The specific apparatus called for in these specifications most certainly should be installed by some one who had had considerable experience with the installation of similar apparatus, and of course preferably by the same manufacturer."

On cross-examination he gave the following testimony:

"*Q.* Do you know of any other company installing apparatus similar to that installed here, the apparatus manufactured by the Sturtevant Company by any other concern?

"*A.* There is the Hanley-Casey Company, and I was identified with the L. H. Prentiss Company of Chicago.

"*Q.* Have they installed apparatus similar to this Sturtevant apparatus?

"*A.* Yes, sir.

"*The Court:* And who else? By similar you mean Sturtevant apparatus?

"*Mr. Dunham:* I mean similar, yes, to the Sturtevant apparatus.

"*A.* Assuming you mean the same type?

"*The Court:* Made by the same company.

"*Mr. Dunham:* Made by the same company and the same type.

"*A.* The L. H. Prentiss Company of Chicago; there is Kehm Bros. & Co. of Chicago. Might I refresh my memory? I have a list of the contractors, which comprises all contractors of heating and ventilating apparatus in Chicago.

"*Q.* Yes.

"*A.* Baker-Smith—

"*Mr. Dunham:* Where are they?

"*A.* These are all Chicago contractors. Davis Construction Company. You have Hanley & Casey. And General Fire Extinguisher Company. F. W. Lamb. Phillips & Gadskow. W. A. Pope. Thomas & Smith. Do you want some more? * * *

"*Q.* Then there is nothing about this particular work in the South High School, in the installation of it, but what these firms that you have named, and some of the others you know of, could do the work; they could do the work?

"*A*. They could have done the work.

"*Q*. And from your experience, so far as that is concerned, any concern in the State of Michigan, Detroit, or Grand Rapids, equally well versed in the installation of that kind of apparatus, could also install it, could they not?

"*A*. Of course we must say equally well equipped with the same workings.

"*Q*. I mean any contracting firm who has done that kind of installing and has experience in that kind of business, the fact that they live in Chicago or Michigan would not make any difference, would it?

"*A*. If the workmen were of the same ability it would not make any difference where they lived."

Everett S. Wood, head of plaintiff's adjustment and credit department, after testifying that in order to effect sales of their apparatus, of the size and complexity of the apparatus in controversy in this case, it was necessary that the plaintiff company should either install the apparatus themselves or superintend its installation, said upon cross-examination:

"*Q*. Then would you say that an engineer technically trained and a mechanic technically trained with reference to blowpipe apparatus and ventilating apparatus would be able to successfully install any of this ventilating apparatus, including Sturtevant?

"*A*. Yes, indeed."

From all the testimony contained in the record we have reached the conclusion that while the apparatus, the subject of the contract in this case, was somewhat complicated, it had no such "intrinsic or peculiar quality or inherent complexity" as made it necessary for the manufacturer to agree to install in order to effect sales generally; indeed, the contrary appears from the testimony of plaintiff's witnesses. Many persons named by those witnesses purchase plaintiff's apparatus and install them and make a business of installing them. The fact that defendant did not show affirmatively that there was a firm or individual in

the State of Michigan capable of making the installation (apparently relied upon by plaintiff), is, we think, of no consequence. The record does show that the apparatus of the American Blower Company was installed in place of that which the plaintiff contracted to itself install. The record further shows that it is the claim of plaintiff that its apparatus is "equal to" the apparatus of the American Blower Company.

Upon a consideration of the whole record we conclude that the sale of plaintiff's apparatus did not depend upon its agreement to install because of any "intrinsic or peculiar quality or inherent complexity," and that therefore the contract was not within the exception described in section 8 of Act No. 310, Pub. Acts 1907, as amended by later and supplementary acts.

The judgment is affirmed.

KUHN, C. J., and STONE, OSTRANDER, BIRD, MOORE, STEERE, and FELLOWS, JJ., concurred.