## FLINT *v.* LE HEUP.

1. FRAUD, BASIS OF—PROMISES.

   Fraud must be predicated on existing facts rather than promises.

2. CORPORATIONS—FOREIGN CORPORATIONS—STATUS.

   A foreign corporation organized for the purpose of establishing and maintaining a summer resort in a foreign

country is engaged in business in the State where it has established an office and agency in a city in the State, and its fiscal agent and secretary transact its business in such city, where its executive officers and nearly all of its resident directors reside and meetings of its stockholders and directors are held, and its stock book is kept and certificates are issued by its secretary.

3. SAME—FOREIGN CORPORATIONS—CONTRACTS — VALIDITY — STATUTES.

The failure of a foreign corporation to comply with 2 Comp. Laws 1915, § 9068, providing that no foreign corporation subject to the provisions of the act shall be capable of making a valid contract in the State until it shall have fully complied with the requirements of the act and at the same time holds an unrevoked certificate to that effect from the secretary of State, invalidates all its contracts.

4. EQUITY—CORPORATIONS—ACCOUNTING—FRAUD.

A stockholder who tenders back to the corporation the stock received and contracts for the purchase of lots and demands return of his money on the ground of fraud is not entitled to an accounting or a trustee or to compel defrauding members to make restitution to it, except on a sufficient showing that he cannot collect what the corporation owes him in a direct action against it. OSTRANDER, J., and KUHN, C. J., dissenting.

5. SAME—ADEQUATE REMEDY AT LAW.

A stockholder in a foreign summer resort corporation illegally doing business in the State has an adequate remedy at law for the recovery of money paid the corporation under void contracts for stock and lots, precluding relief in equity, where no showing is made that the corporation is insolvent, fraudulently concealing its assets or that a judgment against it is uncollectible.[1] OSTRANDER, J., and KUHN, C. J., dissenting.

6. APPEAL AND ERROR—TRANSFER OF CAUSES—JUDICATURE ACT.

Where a suit is improperly brought in equity instead of at

[1] On right to recover back money paid under a contract to a foreign corporation which has not complied with the conditions of doing business in the State, see note in 38 L. R. A. (N. S.) 210.

Authorities discussing the question as to whether establishing agency to handle a corporation's product within the State amounts to doing business within the State, see note in 18 L. R. A. (N. S.) 142.

law and is decided by the trial court before the passage of Act No. 314, Pub. Acts 1915, chap. 11, § 2, authorizing the transfer of causes to the proper side by the trial court when improperly brought in equity or at law, and such law is in effect at the time of the hearing before the Supreme Court, the bill will not be dismissed, but will be remanded to the trial court for further proceedings.

Appeal from Wayne; Hally, J. Submitted October 3, 1917. (Docket No. 6.) Decided December 27, 1917.

Bill by Henry H. Flint against Edward J. Le Heup, the Bar Point Land Company, Limited, and others, to rescind the sale of corporate stock and real estate, on the ground of fraud, and for an accounting. From the decree rendered, plaintiff and defendant company appeal. Reversed, and remanded.

*Neal M. Hebinger* (*Thomas A. Conlon*, of counsel), for plaintiff.

*Oxtoby & Wilkinson*, for defendant Le Heup.

*A. G. Pitts*, for other defendants.

STEERE, J. The Bar Point Land Company, Limited, defendant, is a foreign corporation organized for the purpose of establishing and maintaining a Masonic summer resort at Bar Point, Ontario, and incorporated in January or February, 1913, under the laws of the province of Ontario. The other defendants are, or were when this suit was begun, its officers and directors, nine of whom were residents of Detroit.

Bar Point is on the north shore of Lake Erie about four miles below the city of Amherstburg in the province of Ontario near the mouth of the Detroit river. A tract of land consisting of about 620 acres known as the McBride farm is located at this point. Defendant Le Heup, a jeweler of Detroit, bought this farm in 1912 from the McBrides on a land contract for $20,-000, assisted by his wife, as he states, and defendant

Burrows. He, or they, conceived the idea of promoting and organizing a corporation to take over, or purchase, this property and develop upon it a Masonic summer resort. To that end they enlisted the services of defendant Pitts, an attorney of Detroit, who was to do the legal business of the company, aid in the promotion, and be chosen as secretary; he receiving stock for "legal and other services." He prepared a glowing prospectus of the project for a Masonic park summer resort, emphasizing that subscriptions to capital stock would only be accepted from members of the order in good standing, etc., assurance being given that "the promoters are all Free Masons and have much confidence in the craft." This was followed by other attractive literature, amongst which was an alluring booklet, or pamphlet, distributed generally amongst the fraternity in Detroit and elsewhere, issued by the Bar Point Company, Limited, giving notice of its incorporation with a capital stock of $75,000; "W. L. Updyke, Fiscal Agent, Free Press Bldg., Detroit," stating amongst other things:

"This little book lets you into the secret of Masonic Park, at Bar Point, Lake Erie, as it is a secret among the few who for months have been planning and scheming to make this very thing possible."

The secret it revealed was to a guarded degree largely promissory in its most attractive features, as were many other of the persuading assurances which plaintiff charges as fraud, overlooking the general rule that fraud must be predicated on statement of existing facts rather than promises.

Attracted by some of the company's literature which he read in the "Palestine Bulletin," plaintiff visited defendant Pitts at his office in Detroit and "asked him the details of this thing," which was followed by an interview with the fiscal agent at the office of the Bar Point Land Company in the Free Press building in

Detroit. He was present at a meeting of the directors in that office and talked with different members of the company a number of times. He testified at length as to many and extravagant representations made to him both by the fiscal agent and members of the directorate, amongst which were that the company bought the property of the McBrides for $75,000; that aside from the summer resort project of extensive proportions the tract had other great values (for tobacco growing, fisheries, washed building sand, which alone would pay for the property in time, and they would realize from the whole investment upwards of $2,000,000); that if he took stock and subscribed for lots at that time he could make his selection when they were staked, etc. He thereupon purchased ten shares of the capital stock of the corporation, paying $500 therefor, and took an application contract for two lots, countersigned by the fiscal agent, described as on "Erie Drive, front; block 18, to be selected when staked," paying $100 thereon. These he selected from what Pitts stated was a "preliminary plat," which afterwards had to be changed to comply with the Canadian law.

Plaintiff visited the property before the lots were staked and made preliminary selection where there were some large trees which he fancied, and, when notified the lots had been staked, he went down again with his wife and made his selection accordingly, but found that these lots and two adjoining lots had been assigned to other persons, whom he ascertained were members of the board of directors, which he testified displeased and made him suspicious, following which he ascertained this tract had been bought of the McBrides for $20,000 by Le Heup, who promoted and helped organize the Bar Point Land Company so that it would purchase the tract from him for $75,000— with other secrets of the Masonic Park at Bar Point which the little book did not let him into.

His bill contains 12 allegations of fraud in those particulars, the majority of which are, however, largely of a promissory character. Failing to get the lots which he had selected, plaintiff wrote defendants' fiscal agent that he was at liberty to sell any lots set aside for him to select from, giving as a reason his wife's health, which he testified was introductory to getting out of the concern without controversy if possible, following which he made unsuccessful efforts for some adjustment, and ultimately tendered back his certificates of stock, receipts for payments, etc., demanding return of his money, which was refused. He then filed this bill asking the appointment of a trustee for the corporation to take charge of its affairs, for an accounting with it and its officers and directors, for an injunction, and finally that the contracts for sale of stock and lots to him be declared void and he be granted a decree for return of the amount found by the court his due. Defendants filed answers, and the case when at issue was heard upon pleadings and proofs taken in open court. After argument the trial court found that the defendant foreign corporation was unlawfully carrying on its business in this State in contravention of Act No. 206, Pub. Acts 1901, as amended (2 Comp. Laws 1915, § 9063 *et seq.*), and rendered a decree determining that the contracts plaintiff sought to have set aside were wholly void and should be canceled, directing that upon surrender by plaintiff to it of certificates and receipts relating to the same the land company return to him the $600 which he had paid on such void contracts, with 5 per cent. interest from date of payment. While the decree recites that it satisfactorily appears to the court "complainant is entitled to a decree as prayed for in said bill of complaint," no reference is made therein to the defendant officers and directors, and no other relief is granted except as above stated. From this decree plaintiff has

appealed, because his prayer for relief was only granted in the one particular, and the Bar Point Land Company has appealed because decree was rendered against it for the $600.

It is conceded that the Bar Point Land Company had not complied with the law authorizing foreign corporations to carry on business in this State at the time these contracts were made and the money paid its secretary in Detroit. It had established an office and agency in that city, with its fiscal agent and secretary transacting its business. Its executive officers and nearly all its directors were residents of Detroit, meetings of stockholders were held there, and the directors met there as a rule. Its stock book was kept there, and certificates were issued from there by its secretary. No question of interstate commerce is involved, and, without going into further details, it is sufficient to say the testimony is convincing that this foreign corporation was actively and to a large degree carrying on its business in Michigan within the meaning of the law. *Neyens* v. *Worthington,* 150 Mich. 580 (114 N. W. 404, 18 L. R. A. [N. S.] 142).

Section 6 of the amended act (Act No. 310, Pub. Acts 1907; section 9068, 2 Comp. Laws 1915) now provides:

"No foreign corporation, subject to the provisions of this act, shall be capable of making a valid contract in this State until it shall have fully complied with the requirements of this act, and at the time holds an unrevoked certificate to that effect from the secretary of State."

It will be observed that this provision is more stringent than those found in the preceding acts it amends (Act No. 206, Pub. Acts 1901; Act No. 34, Pub. Acts 1903), which only prohibited foreign corporations subject to the law from maintaining actions in this State, on Michigan contracts made by them, until they had

domesticated as the law provides. The significance of this distinction is discussed by Justice HOOKER in *Hastings Industrial Co.* v. *Moran,* 143 Mich. 679 (107 N. W. 706). The provision of the present law, like that passed upon in *Rough* v. *Breitung,* 117 Mich. 48 (75 N. W. 147), providing such contracts shall be wholly void, is too plain to call for construction or interpretation. In *Showen* v. *Owens Co.,* 158 Mich. 321 (122 N. W. 640, 133 Am. St. Rep. 376), it is said in discussing this act: "By section 6 a failure to comply with the act invalidates all contracts."

The attitude and evident object of plaintiff in filing this bill was to recover money the defendant corporation owed him, which he claims it had secured in fraud of his rights on these void contracts subsequently repudiated. He alleges in his bill that he tendered back to the corporation his certificate of stock, which vested him with the rights of a stockholder, the receipts for payment on lots, etc., "and demanded a return of his money," because of the deceit and fraud practiced upon him, thus repudiating the contracts and offering restitution of that which he had received. He did not allege in his bill of complaint, as ground for rescission and recovery, failure of the defendant foreign corporation to comply with the domestication law. That was apparently an afterthought. The trial court, however, granted his prayer that the contracts be declared null and void and the money he had paid the corporation be returned to him upon that ground, but failed to find, so far as the record discloses, that he had shown himself entitled to relief on the ground of active fraud by either the corporation or its directors.

Defendants contend, and the trial court apparently found, that under his repudiation of the contract, by which he would if valid and recognized have been a stockholder, he was not in a position as a stockholder to press a suit in equity against defendant Le Heup

and his codirectors on the theory that they had perpetrated a fraud upon the corporation and its stockholders by selling it the McBride farm at the excess over what Le Heup paid for it, or other alleged fraudulent conduct in violation of their trust relations with it. Plaintiff not only fails to prove that the farm, which he visited at least twice, was worth less than the price paid for it by the corporation, but makes no showing that the corporation with which he dealt and to which he paid the money is insolvent, fraudulently concealing or disposing of its assets, or that a judgment against it is uncollectible. Having taken the position that the contracts are void and he is not a stockholder of the corporation, but its creditor with a liquidated demand for which he is entitled to judgment, he is not concerned with its internal affairs and has no right to an accounting, a trustee, or to compel defrauding members to make restitution to it, except on a sufficient showing that he cannot collect what the corporation owes him in a direct proceeding against it.

This brings us to the question of jurisdiction, which the trial court is shown to have only passed upon inferentially. Whether plaintiff asserted right to repudiate the contracts and recover what he paid upon them is predicated upon a claim of active fraud or their invalidity under the statute, he had, so far as this record discloses, a complete and adequate remedy at law against the Bar Point Land Company with which he dealt and to which he paid the money he seeks to recover. *Laubengayer* v. *Rohde,* 167 Mich. 605 (133 N. W. 535) ; *Heffernan* v. *Burns,* 175 Mich. 457 (141 N. W. 529) ; *Excelsior Wrapper Co.* v. *Yund,* 176 Mich. 372 (142 N. W. 572) ; *Berger* v. *Roe,* 179 Mich. 184 (146 N. W. 200) ; *Reis* v. *Applebaum,* 182 Mich. 582 (148 N. W. 696) ; *Lannin* v. *Lynn,* 184 Mich. 325 (151 N. W. 645). In such case equity will not take jurisdiction, and this decree must be set aside for that reason.

Section 2, chap. 11, of the judicature act (Act No. 314, Pub. Acts 1915, 3 Comp. Laws 1915, § 12351), provides:

"If at any time it appear that a suit commenced in equity should have been brought as an action on the law side of the court, or if it appear that an action commenced on the law side of the court should have been brought in equity, it shall be forthwith transferred to the proper side, and be there proceeded with, with only such alteration in the pleadings as shall be essential."

This provision is, of course, purely a matter of practice and in substance corresponds with new Federal Equity Rule No. 22, adopted by the United States Supreme Court in 1912 (198 Fed. xxiv, 115 C. C. A. xxiv).

Although settlement of this case on appeal was signed by the trial judge November 18, 1916, the decree was rendered and entered October 25, 1915. The judicature act of 1915 did not take effect until January 1, 1916. At the time of the decree, the chancery court had no authority under the then practice to transfer the case, and could only have dismissed plaintiff's bill of complaint without prejudice; but the bill was not dismissed, jurisdiction was retained, and the case brought here on appeal to be heard in this court *de novo*, as required in chancery cases. It has appeared upon the hearing in this court, and been determined, that under the issues involved the suit should have been brought as an action on the law side of the court. The equity court now having authority under the statute to transfer the case "at any time" when it appears such course should be taken, this court will not dismiss the bill, but set aside the decree rendered in the court below and remand the case for further proper proceedings in the trial court.

The decree of the chancery court of Wayne county is therefore set aside, with costs of this court to de-

fendants, and the case remanded for such further proceedings as parties may desire and are entitled to in accordance with this opinion.

STONE, BIRD, MOORE, BROOKE, and FELLOWS, JJ., concurred with STEERE, J.

OSTRANDER, J. In my opinion the court of equity has jurisdiction to cancel the land contracts, leaving the plaintiff a shareholder in the corporation. The cause ought not to be dismissed.

.KUHN, C. J., concurred with OSTRANDER, J.