HAYES WHEEL CO. v. AMERICAN DISTRIBUTING CO.

(Circuit Court of Appeals, Sixth Circuit.   May 12, 1919.)

No. 3252.

1. COMMERCE ☞69—INTERSTATE COMMERCE—INTERFERENCE BY STATE—COR-
PORATIONS.
   Pub. Acts Mich. 1907, No. 310, declaring that no foreign corporation
shall be capable of making a contract within the state until compliance
with provisions of the act, does not impose or attempt to impose a tax on
all the capital of a foreign corporation, whether employed in state or in-
terstate commerce, or to tax property permanently without the state, or
to impose a fee upon its business done in the state, without distinction be-
tween state and interstate, and is not otherwise invalid.

2. CORPORATIONS ☞661(2)—FOREIGN CORPORATIONS—RIGHT TO SUE.
   Plaintiff, a foreign corporation, held to have a substantial local and do-
mestic business entirely separate from, and not merely incidental to, its
interstate business, so that it could not, where it had not complied with
Pub. Acts Mich. 1907, No. 310, maintain suit for unpaid commissions, as
well as anticipatory damages on account of cancellation of contract for
sale on commission "for the entire United States" of automobile wheels
manufactured by defendant, a Michigan corporation, in view of Comp.
Laws Mich. 1897, § 10467.

3. TRIAL ☞141—QUESTIONS OF LAW OR FACT.
   Whether plaintiff, a foreign corporation, was doing business in Michi-
gan, so as to be subject to the taxing laws of Michigan, held one of law:
the evidence not being conflicting.

4. COURTS ☞95(2), 366(7)—DECISION OF STATE SUPREME COURT—FOLLOWING
BY FEDERAL COURT.
   The Supreme Court of Michigan having construed Pub. Acts Mich. 1907,
No. 310, as making unenforceable a contract made by a foreign corpora-
tion before compliance with the act, notwithstanding compliance had while
contract is still in force, the declaration of invalidity must be recognized
by courts, state or federal, wherever suit may be brought for enforcement
of contract.

In Error to the District Court of the United States for the Eastern
District of Michigan; Arthur J. Tuttle, Judge.

Assumpsit by the American Distributing Company against the
Hayes Wheel Company. Verdict and judgment for plaintiff, motion
for judgment notwithstanding verdict denied (250 Fed. 109), and
defendant brings error. Reversed, with directions.

Justin R. Whiting, of Detroit, Mich., and Richard Price, of Jack-
son, Mich., for plaintiff in error.

Thomas E. Barkworth, of Jackson, Mich., for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit
Judges.

KNAPPEN, Circuit Judge.   On July 1, 1910, the American Dis-
tributing Company, an Ohio corporation, having its office and prin-
cipal place of business at Jackson, Mich., contracted in writing at
that place, for the sale on commission "for the entire United States,"
for a term of five years, of automobile wheels manufactured by the
Hayes Wheel Company, a Michigan corporation, engaged at Jackson,

Mich., in the manufacture of such wheels. The Distributing Company's business was that of selling agents for manufacturers of automobile parts. At the time this contract was made the Michigan statute (P. A. Mich. 1907, Act No. 310) declared it unlawful for any foreign corporation to carry on business in Michigan until it should procure from the secretary of state a certificate of authority for that purpose, to obtain which it was required to make a sworn statement showing, among other things, the location of its principal office and principal place or places of business generally, as well as specifically, in Michigan, the total value of the property owned and used by it in its business and the value of the property owned and used in Michigan, the total amount of business transacted during the preceding year, and the amount, if any, transacted in Michigan, and "such other facts bearing on the matter as the secretary of state may require." The corporation was required to pay to the secretary of state a franchise fee (subject to a minimum of $25) of one-twentieth of 1 per cent. of "its authorized capital stock represented by the property owned and used and business transacted in Michigan," as determined by the secretary of state. Until compliance with the act, foreign corporations subject to it were declared incapable of making valid contracts in Michigan. Section 8 expressly provided that the act should not be construed "to prohibit any sale of goods or merchandise which would be protected by the rights of interstate commerce." The Distributing Company had made no attempt to comply with this statute, although it had been doing the same kind of business at Jackson, Mich., for about 18 months before the contract in question was made; nor did it make any attempt to so comply until more than 3 years after the contract was made.

On May 25, 1914, the Wheel Company canceled the contract, and thereupon the Distributing Company brought this suit to recover certain unpaid commissions already earned under the contract, as well as anticipatory damages on account of its cancellation. By another statute then in force (Comp. Laws Mich. 1897, § 10467) a foreign corporation, subject to the act and not complying with it, was in effect denied right of action upon contracts resulting therefrom. Flint v. Le Heup, 199 Mich. 41, 47, 48, 165 N. W. 626, and cases cited. There was trial by jury. Against defendant's objection that plaintiff could not recover, because of failure to comply with this statute, the latter recovered verdict and judgment; the trial court holding as matter of law that the contract related essentially to interstate commerce and so was not affected by the Michigan statute. See opinion on motion for new trial, 250 Fed. 109. The correctness or incorrectness of this conclusion is the only question presented.

The general limitations upon state control of commerce are well defined. It is fundamental that interstate commerce is within the protection of the federal Constitution, and that a state has no power by taxation to impose a burden upon it. Lyng v. Michigan, 135 U. S. 161, 10 Sup. Ct. 725, 34 L. Ed. 150; Rosenberger v. Pacific Express Co., 241 U. S. 48, 36 Sup. Ct. 510, 60 L. Ed. 880. And if, as plaintiff

contends, the effect of the Michigan statute is to impose a tax upon every foreign corporation which does business in the state, even though engaged wholly in interstate commerce, it is bad. McCall v. California, 136 U. S. 104, 109, 10 Sup. Ct. 881, 34 L. Ed. 392; N. & W. Ry. Co. v. Pennsylvania, 136 U. S. 114, 10 Sup. Ct. 958, 34 L. Ed. 394. And so, in other words, if the state has required plaintiff, as a condition of doing business in Michigan, to surrender its constitutional right to transact commerce between the states. So. Pacific Co. v. Denton, 146 U. S. 202, 207, 13 Sup. Ct. 44, 36 L. Ed. 942. Applying these principles concretely, the statute is bad if it attempts to impose a tax upon all plaintiff's capital, whether employed in state or interstate commerce (Pullman Co. v. Kansas, 216 U. S. 56, 30 Sup. Ct. 232, 54 L. Ed. 378; Western Union Co. v. Kansas, 216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355; Butler Bros. Co. v. U. S. Rubber Co. [C. C. A. 8] 156 Fed. 1, 17, 84 C. C. A. 167); or if it attempts directly or indirectly to tax property permanently without the state (Louisville, etc., Co. v. Kentucky, 188 U. S. 385, 396, 23 Sup. Ct. 463, 47 L. Ed. 513); or if it assumes to impose a license or franchise fee upon business done in the state without distinction between state and interstate business (Crutcher v. Kentucky, 141 U. S. 47, 11 Sup. Ct. 851, 35 L. Ed. 649).

On the other hand, the authority of the state to restrict the right of plaintiff corporation to engage in business within its limits, or to sue in its courts, so long as interstate commerce is not thereby burdened, is well settled (Baltic Mining Co. v. Massachusetts, 231 U. S. 68, 83, 34 Sup. Ct. 15, 58 L. Ed. 127; Interstate Amusement Co. v. Albert, 239 U. S. 560, 568, 36 Sup. Ct. 168, 60 L. Ed. 439); and the mere fact that plaintiff is engaged in interstate commerce does not exempt its property from state taxation (White Co. v. Massachusetts, 231 U. S. 68, 82, 83, 34 Sup. Ct. 15, 58 L. Ed. 127; Baltic Mining Co. v. Massachusetts, supra); and if the state tax affects merely the proportion of plaintiff's property in the state devoted to state business, or the domestic business done within the state, and the state business is thus capable of separation from the interstate, the latter is thus not directly or indirectly burdened, and the tax is good (Western Union Co. v. Massachusetts, 125 U. S. 530, 552, 8 Sup. Ct. 961, 31 L. Ed. 790; Ratterman v. Western Union Co., 127 U. S. 411, 424, 8 Sup. Ct. 1127, 32 L. Ed. 229; Pullman Co. v. Adams, 189 U. S. 420, 23 Sup. Ct. 494, 47 L. Ed. 877; Allen v. Pullman Co., 191 U. S. 171, 24 Sup. Ct. 39, 48 L. Ed. 134). If not so capable of separation, it would be bad. "The substance, and not the shadow, determines the validity of the exercise of the power." International Paper Co. v. Massachusetts, 246 U. S. at page 144, 38 Sup. Ct. at page 295, 62 L. Ed. 624, Ann. Cas. 1918C, 617.

[1] Does the Michigan statute impose or attempt to impose a tax upon all the capital of a foreign corporation whether employed in state or interstate commerce, or to tax property permanently without the state, or to impose a fee upon its business done in the state, without distinction between state and interstate? It seems to us clear that it neither does nor attempts to do either of these things. The language of the statute indicates, in our opinion, an intention to assess the

franchise fee only upon domestic business, which is assumed to be capable of separation from interstate business. The tax is in terms limited to a percentage of "the proportion of its authorized capital stock represented by the property owned and used and business transacted in Michigan, determined as above provided." The secretary of state is to determine this proportion, not arbitrarily, as plaintiff charges, but "from the papers so filed and the facts so reported [by the corporation] and any other facts coming to his knowledge bearing upon the question." Nor is the corporation without remedy against unrestrained or mistaken determination of what such proportion amounts to, neither is it subject to the employment of secret or private information in reaching such determination. It is not only expressly given "the right, on application, to be heard by the secretary of state touching the matter of the determination of the proportion of its capital stock represented by property used and business done in Michigan," but, if dissatisfied with the result, it is in terms given the right of appeal to a "board of appeal consisting of the auditor general, state treasurer and attorney general." Due provision is thus, in our opinion, made for separating state from interstate business. The fact that the statute declares final the decision of this board of appeal does not effect a denial of due process. The right of appeal from the decision of an administrative board in assessing taxes and valuing property is not necessary. "One hearing is sufficient to constitute due process." Mich. Central R. R. Co. v. Powers, 201 U. S. at pages 301, 302, 26 Sup. Ct. at page 466, 50 L. Ed. 744. "A day in court is a matter of right in judicial proceedings, but administrative proceedings rest upon different principles." [1] Under the Michigan system of taxation generally, while a valuation by a reviewing board is final in the absence of fraud, yet a remedy in some form is always open against fraudulent or arbitrary conduct. We are cited to no authorities, and we have found none, opposed to the conclusion that a tax measurement such as the statute in question provides does not burden interstate commerce. It cannot well be claimed that the minimum fee of $25 is unreasonable, or that it burdens interstate commerce.

The remaining provisions of the act strengthen rather than weaken the inference naturally deducible from the assessment provisions we have discussed, viz. that the act was not intended to impose a tax upon interstate business. The declaration that it shall be unlawful for any foreign corporation to carry on its business in this state until it has procured certificate of authority must be considered in connection, not only with the assessment provisions already cited, but with the declaration of section 8, that the act shall not be construed "to prohibit any sale of goods or merchandise which would be protected by the rights of interstate commerce." So considered (whatever might be the effect of the quoted words standing alone), the natural meaning of the words "its business" would be "its domestic [state] business." But we are not left to our own interpretation of the statute, for the Supreme Court of Michigan has expressly or by necessary implication repeatedly construed the act of 1907 and other statutes of like nature

---

[1] Per Justice Cooley, in Weimer v. Bunbury, 30 Mich. 214, 215.

as not imposing a tax upon interstate business.[2]   The Michigan statute of 1891 (No. 182), as amended by Pub. Acts 1893, No. 79, which in terms required every foreign corporation "which shall hereafter be permitted to transact business in this state" to pay a franchise fee, and provided that all contracts made in the state "by any corporation which has not first complied with the provisions of this act shall be wholly void," was construed by the Supreme Court of the state as not applicable "to foreign corporations whose business within this state consists merely of selling, through itinerant agents, and delivering commodities manufactured outside of this state."   Coit v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819.   The Michigan act of June 20, 1889 (3 Howell's Ann. Stat. § 4161d6) which declared the terms on which manufacturing and mercantile companies generally, both foreign and domestic, might carry on business in that state, was construed in People v. Hawkins, 106 Mich. 479, 483, 64 N. W. 736, 738, as not "aimed at the exclusion of foreign companies, or the imposition of conditions upon their doing business, unless they desire the benefits to be derived from the law applicable to domestic corporations."   The construction of both of these acts by the Michigan Supreme Court was adopted by this court in Oakland Co. v. Wolf Co., 118 Fed. 239, 243, 55 C. C. A. 93.   And see Coit v. Sutton, 102 Mich. 324, 60 N. W. 690, 25 L. R. A. 819.

In Fifth Avenue Society v. Hastie, supra, section 6 of the act of 1901 (No. 206), which is in the identical language of section 8 of the act of 1907, is referred to as declaring that the provisions of this act shall not be applicable to the sale of goods or merchandise which would be protected by the rights of interstate commerce.   In Imperial Curtain Co. v. Jacob, supra, 163 Mich. 76, 127 N. W. 774 (also under the act of 1901), it is said: "If the plaintiff did any business of a local character, the case is not within the terms of the statute."   In Standard Fashion Co. v. Cummings, supra, the foreign corporation involved was held not to be doing business in Michigan.   The act of 1901 (No. 206) and the amendments of 1903 (No. 34), 1911 (No. 266), and 1913 (No. 277), differ, we think, from the act of 1907 (No. 310) in no respect material to the decision of this case.   The construction put by the Supreme Court of Michigan on the meaning of the statute is binding upon us, although its determination of the necessary effect of the statute is not conclusive.   Crew v. Pennsylvania, 245 U. S. 292, 294, 38 Sup. Ct. 126, 62 L. Ed. 295; Standard Oil Co. v. Graves, 249

[2] Despres v. Zierleyn, 163 Mich. 399, 128 N. W. 769; Nernst Lamp Co. v. Conrad, 165 Mich. 604, 609, 131 N. W. 120; Lange Co. v. Brace, 186 Mich. 453, 459, 152 N. W. 1026 (all of these cases involve the statute of 1907); Fifth Avenue Society v. Hastie, 155 Mich. 56, 118 N. W. 727; Imperial Curtain Co. v. Jacob, 163 Mich. 72, 127 N. W. 772 (both of which cases were under the previous act of 1901); Haughton Elevator Co. v. Candy Co., 156 Mich. 25, 120 N. W. 18: Standard Fashion Co. v. Cummings, 187 Mich. 196, 153 N. W. 814, L. R. A. 1915F, 329, Ann. Cas. 1916E, 413 (the last two cases arising under the act of 1903); Power Specialty Co. v. Michigan Power Co., 190 Mich. 699, 157 N. W. 408 (arising under the amendment of 1911); Sturtevant Co. v. Leitelt, 196 Mich. 552, 163 N. W. 13 (arising under the amendment of 1913).

U. S. 389, 39 Sup. Ct. 320, 63 L. Ed. ——, decided by the Supreme Court April 14, 1919.

The cases specially relied upon by plaintiff are, in our opinion, clearly distinguishable from the instant case. In Crutcher v. Kentucky, supra, the statute was construed as requiring the foreign express company to obtain a license from the state preliminary to doing interstate business. The statute involved in Western Union Telegraph Co. v. Kansas, 216 U. S. 1, 30 Sup. Ct. 190, 54 L. Ed. 355, and Pullman Co. v. Kansas, 216 U. S. 56, 30 Sup. Ct. 232, 54 L. Ed. 378, attempted to tax the entire capital stock of the foreign corporation as condition of doing business within the state. The law involved in International Text-Book Co. v. Pigg, 217 U. S. 91, 30 Sup. Ct. 481, 54 L. Ed. 678, 27 L. R. A. (N. S.) 493, 18 Ann. Cas. 1103, exacted a tax by way of a percentage upon the entire capital stock of the foreign corporation, and, as construed by the Kansas courts, was intended to apply even where the business of the foreign corporation was purely interstate. It also required, as a condition of doing business, a statement setting forth certain facts as to the amount of capital stock, its value, etc., and forbade the maintaining of action by the corporation unless certificate of such filing had been obtained. The requirement of this statement was held a burden on interstate commerce. In Looney v. Crane, 245 U. S. 178, 38 Sup. Ct. 85, 62 L. Ed. 230, the taxes in question seem to have been assessed with reference to the entire authorized capital stock. The case was aggravated by large increases in rates, etc., after the foreign corporation had established its agency. In Crew v. Pennsylvania, 245 U. S. 292, 38 Sup. Ct. 126, 62 L. Ed. 295, the tax held bad was measured by a percentage of the entire business transacted, although the foreign sales were about 86 per cent. of the gross sales. In International Paper Co. v. Massachusetts, 246 U. S. 135, 38 Sup. Ct. 292, 62 L. Ed. 624, Ann. Cas. 1918C, 617, there was involved a percentage tax computed on the entire authorized capital. The case was distinguished from the Baltic Mining Co. Case, supra, in the fact that since the decision in the latter case was rendered the Legislature had removed the previously existing $2,000 maximum limitation, thus making it in essential and practical operation like Western Union Co. v. Kansas and Pullman Co. v. Kansas, supra. The other cases relied upon by plaintiff seem to require no special mention.

On the other hand, in Western Union Co. v. Massachusetts, supra, a tax on account of property owned and used by the corporation in that state, whose value was ascertained by comparing the length of its lines in that state with the length of its entire lines, was held good. In Ratterman v. Western Union Co., supra, a tax assessed under the laws of Ohio upon receipts of the telegraph company, derived partly from interstate and partly from state commerce and capable of separation, but returned in gross, was held invalid in proportion to the extent that the receipts were derived from interstate commerce, but otherwise valid. In Pullman Co. v. Adams, supra, a tax imposed by the laws of Mississippi on sleeping and palace car companies, based on mileage of railroad track in the state over which the cars were run, plus a specific charge of $100, was sustained. In Allen v. Pullman Co.,

supra, a statute of Tennessee assessing a tax of $3,000 per annum, in lieu of all other except ad valorem taxes, on account of passengers whose transportation began and ended within the state, not referring to or affecting the interstate business of the companies, was sustained. In Kansas City Railway v. Kansas, 240 U. S. 227, 232, 36 Sup. Ct. 261, 60 L. Ed. 617, a tax on the privilege of being a corporation, graduated according to paid-up capital, with a reasonable maximum assessed against a domestic corporation engaged in both state and interstate commerce, was held not improper under the due process clause of the Constitution. In Baltic Mining Co. v. Massachusetts, supra, and White Co. v. Massachusetts, supra, an excise tax measured by the authorized capital of the corporation, but limited to a specified sum, was held not an unconstitutional burden on interstate commerce, and not to violate the due process or equal protection clauses of the Constitution. We conclude that a foreign corporation, doing a wholly interstate business, was not required to make declaration or procure certificate of authority. It results that, in our opinion, the Michigan statute in question does not impose a burden upon interstate commerce, nor is it otherwise invalid.

[2] We are thus brought to the ultimately controlling question whether, as plaintiff urgently insists is the case, its business was solely interstate commerce, the local business being merely incidental thereto, or whether, on the other hand, plaintiff was engaged locally in both state and interstate commerce. In the former case it would not be subject to the tax; in the latter, it would be.

Plaintiff's business embraced sales largely by way of orders taken by traveling solicitors from automobile manufacturers in several states lying generally, if not universally, north of the Ohio and east of the Mississippi rivers. Plaintiff seems to have had no office, at least for commercial business, anywhere except at Jackson, Mich. There its books and records of commercial transactions were kept; there a majority at least of its officers resided, and at or from that point all of its business seems to have been directed and conducted, excepting so far as concerns actual solicitation of orders by traveling salesmen. The business of at least one of these salesmen was confined to Michigan. Plaintiff was acting under similar contracts as sales agent for several manufacturers of automobile parts, other than defendant. So far as the record shows, all its tangible property was in Michigan. That state was and is the most prominent of the automobile manufacturing states.

During the five-year contract period plaintiff's sales in Michigan amounted to 61.2 per cent. of its total sales, and for the last 1½ years of that period the Michigan sales were about 75 or 80 per cent. of the aggregate business. While the proportion of Michigan business increased during the contract period, and the proportion when the contract was made does not definitely appear, the natural inference from the record and the arguments would be, we think, that the Michigan sales were from the first approximately at least one-half of the total sales. Plaintiff's declaration, made September 29, 1913, for authority to do business in Michigan, gave the location of its principal office

and of its principal place of business as Jackson, Mich., and two of its three officers as residing there, and the third as living at Detroit, Mich. Its authorized capital stock was reported at $4,000 [under the statute in question the tax would have been $25]; the total value of its property owned and used in its business as $23,538.98, all of which, with the exception of furniture and fixtures, represented cash and accounts and bills receivable. The value of the property owned and used in Michigan was given as "furniture and fixtures $294.96," the total amount of business transacted during the preceding year was stated (in the sixth item) to be $42,893.96, and the amount transacted, in Michigan as "all, as specified in sixth item."

It is difficult, if not impossible, to distinguish plaintiff's business in principle from that of the ordinary domestic mercantile corporation selling at wholesale, both in the state of its creation and business location as well as in other states. Assuming, as we do, for the purposes at least of this opinion, that plaintiff's business, so far as it related to business outside of Michigan, was in interstate commerce, it yet seems plain to us, not only that, independently of the question whether plaintiff's business was local or interstate, it was doing business in Michigan, and so within the statute of that state if it was doing a substantial Michigan business (International Text-Book Co. v. Pigg, supra, 217 U. S. at pages 104, 105, 30 Sup. Ct. 481, 54 L. Ed. 678, 27 L. R. A. [N. S.] 493, 18 Ann. Cas. 1103), but also that it was in fact doing a substantial local business in Michigan within the meaning of the law of interstate commerce. We think it a misnomer to characterize its business as essentially interstate. In our opinion it had a substantial local and domestic business, entirely separate from, and not merely incidental to, its interstate business. Baltic Mining Co. v. Massachusetts, supra, at page 86, 34 Sup. Ct. 15, 58 L. Ed. 127; Nernst Lamp Co. v. Conrad, supra; Lange v. Brace, supra, at page 462, 152 N. W. 1026; American, etc., Co. v. Griswold, 143 App Div. 807, 128 N. Y. Supp. 206, affirmed 206 N. Y. 723, 100 N. E. 1124; Flint v. Le Heup, supra, at page 47, 165 N. W. 626; Loomis v. Construction Co. (C. C. A. 6) 211 Fed. 453, 456, 128 C. C. A. 125, and cases cited.

Comparison with the leading cases relied on by plaintiff serves to emphasize the substantial and, we think, the dominant nature of this local and domestic business. For example, in Crutcher v. Kentucky, supra, the principal office was in New York, the state of its creation, only its local office was in Kentucky, and the Kentucky business was presumably but a few per cent. at the most of the company's total business. In Western Union v. Kansas, supra, and Pullman v. Kansas, supra, a similar situation presumably existed. In International Text-Book Co. v. Pigg, supra, the Book Company did its manufacturing and exercised its corporate franchises generally in the state of its incorporation, and had no office of its own within the state of Kansas. In International Paper Co. v. Massachusetts, supra, the corporation's home office was in the state of its creation, where its sales were passed on; and in Massachusetts, whose tax was in question, but one of its 23 mills was located. In Looney v. Crane, the corpora-

tion's home office and principal place of business, where its manufacturing and dealings generally were carried on, was in the state of its creation. The Texas agency was a supply depot for carrying on interstate commerce, and to it goods were shipped from the principal place of business and from it shipments were made to customers within and without Texas. The situation in Crew v. Pennsylvania has already been stated.

[3] In each of these cases the business done at the office in the state of the corporation's creation was the dominant business. In the instant case, even if the business done by plaintiff in the foreign state (Michigan) was not its dominant business, it clearly was a substantial and separable part of it. The mere fact that it involved interstate business did not impress the local and domestic business with that character. Williams v. Fears, 179 U. S. 270, 276, 21 Sup. Ct. 128, 45 L. Ed. 186; Interstate Amusement Co. v. Albert, 239 U. S. 560, 565, 36 Sup. Ct. 168, 60 L. Ed. 439. While the question whether the plaintiff was "doing business in Michigan," so as to subject it to the tax law of that state, would be one of fact, if the evidence were in conflict (Oakland Co. v. Wolf Co., supra), we think that, upon this record, the question is one of law.

[4] These views compel a reversal of the judgment below, unless plaintiff's compliance with the statute in 1913 made the contract enforceable after that date. Section 6 of the statute of 1907 declares that—

"No foreign corporation, subject to the provisions of this act, shall be capable of making a valid contract in this state until it shall have fully complied with the requirements of this act. * * *"

The Supreme Court of Michigan has construed the statute as making unenforceable a contract made before compliance with the statute, notwithstanding compliance was had while the contract was yet in force. Showen v. Owens, 158 Mich. 321, 332, 122 N. W. 640, 133 Am. St. Rep. 376; Despres v. Zierleyn, 163 Mich. 399, 403, 404, 406, 407, 128 N. W. 769; Nernst v. Conrad, 165 Mich. 604, 605, 609, 131 N. W. 120. And see Flint v. Le Heup, 199 Mich. 41, 47, 48, 165 N. W. 626; Hastings Industrial Co. v. Moran, 143 Mich. 679, 107 N. W. 706. This declaration of invalidity must be recognized by the courts, state or federal, in whatever state suit may be brought for its enforcement. Loomis v. People's Construction Co. (C. C. A. 6) 211 Fed. 453, 457, 458, 128 C. C. A. 125, and cases there cited. As the case must be tried again, we neither express nor intimate an opinion on the question whether plaintiff is entitled to recover on a quantum meruit or otherwise, on account of commissions earned before the cancellation, or whether (a question not suggested by counsel) the dealings between the parties have been such, since plaintiff's compliance with the Michigan statute, as to work, in equity or otherwise, a ratification by or estoppel against defendant, as concerns the contract in suit. See Turner v. Construction Co. (C. C. A. 5) 229 Fed. 702, 144 C. C. A. 112; Montgomery Traction Co. v. Montgomery Light, etc., Co. (C. C. A. 5) 229 Fed. 672, 144 C. C. A. 82. Neither of these

questions has been argued by counsel or apparently considered by the District Judge.

The judgment of the District Court is reversed with directions to award a new trial.