## A. H. ANDREWS CO. v. COLONIAL THEATRE CO.

(District Court, E. D. Michigan, N. D.    September 23, 1922.)

No. 249.

1. Corporations ⬉642(4)—Contract held to be void, as requiring doing business in state by foreign corporation not authorized.

Plaintiff, an Illinois corporation not authorized to carry on business in Michigan, under Comp. Laws Mich. 1915, § 9063, contracted to manufacture in Illinois, ship, and install seats in a theater in Michigan. The installation consisted in fastening the seats in their places to the cement floor which was to be done by local unskilled labor under direction of a superintendent sent by plaintiff. *Held*, that the part of the contract for installation bore no necessary relation to the interstate commerce features of the transaction, but was for a carrying on of business in Michigan, and the contract was therefore in violation of the statute and void.

2. Sales ⬉62—Contract not divisible.

A contract to "manufacture, transport, deliver, and set up ready for use" chairs for equipment of a theater for a stated price per chair payable on completion of the contract, *held* entire and not divisible.

At Law.    Action by the A. H. Andrews Company against the Colonial Theatre Company.    On motion by plaintiff to set aside verdict and for new trial.    Denied.

Warren, Cady, Hill & Hamblen, of Detroit, Mich., for plaintiff. Farley & Selby, of Flint, Mich., for defendant.

TUTTLE, District Judge.    This is a motion by the plaintiff to set aside the verdict directed by the court in favor of the defendant and to grant a new trial.    The action was brought by an Illinois corporation, which was not authorized to do business in Michigan, against a Michigan corporation, which occupied and was preparing to equip a new theater building, for the recovery of damages under a contract between the parties for the sale and installation in said theater, by plaintiff, of certain theater chairs.    The contract provided in substance that "the party of the first part [plaintiff] agrees to manufacture, transport, deliver and set up ready for use in Colonial Theatre at Flint, Mich.," said theater chairs; which were to be shipped by plaintiff to Flint and there installed in said theater by it within a specified time, in accordance with a diagram to be furnished by the defendant.    It was agreed, by said contract, that the defendant should give plaintiff free access to, and possession of, the auditorium (with plenty of heat and light in the same, free of charge, and the floor to be clear of all obstruction and débris) wherein said "seating" was to be placed, and should furnish to plaintiff, free of charge, the electrical current necessary to properly operate the motor generator, drills, and other tools used in fastening said chairs to

⬉For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the floor. The contract called for the payment of a stated amount per chair, no division being made as between the purchase price of such chair and the charge for installation thereof. There is no direct evidence as to the place where the contract was made, but it was apparently consummated in Illinois. After manufacture, but before transportation, delivery, or installation of the chairs involved, defendant refused to accept them, and this action was thereupon brought to recover from the latter the unpaid balance alleged to be due under said contract; a payment on account having been already made by defendant.

The testimony shows that, according to the practice of plaintiff in the installation of such chairs by it, one man, called by it a "superintendent," is sent to the theater in question with a blueprint and diagram (supplied by the purchaser) of the floor of such theater, and, if the floor be, as here, of cement, with an electric drill to bore holes in the floor. He employs the necessary help in the local community, and shows such help (which need not be skilled labor) how to install the chairs. He first marks with a crayon the places where, according to the aforesaid diagram, the holes are to be, and are, bored by said drill. An expansion bolt is placed over an expansion shield, which is driven into the hole. A leg of a chair is next set over this bolt which projects slightly upward from the hole above the surface of the floor. A nut is then fastened to the protruding top of the bolt and tightened, until the shield expands and fastens the leg of the chair, previously set upon and over the bolt, securely to the floor by friction. This process is repeated with each chair. The chairs are shipped from the factory to the theater in a knocked-down condition, and on arrival at the place where they are to be installed are set up (by a simple and well-known operation) and installed by ordinary workmen employed by the plaintiff in the manner just described. The method and appliances thus employed are common practice and easily understood, and often used in fastening chairs securely to cement floors in theaters, schools, and other buildings.

[1] The defense to this action is based upon the contention that the contract hereinbefore mentioned is void and unenforceable, because it required the carrying on of business in Michigan by the plaintiff corporation, which the latter was prohibited by the Michigan statutes from doing by reason of its failure to comply with the statutory requirements applicable. Section 1 of Act 206 of the Michigan Public Acts of 1901, as amended, being section 9063 of the Michigan Compiled Laws of 1915, provides:

"It shall be unlawful for any corporation organized under the laws of any state of the United States, except the state of Michigan, or of any foreign country, to carry on its business in this state, until it shall have procured from the secretary of state of this state a certificate of authority for that purpose."

Section 6 of the same act (section 9068 of the Michigan Compiled Laws of 1915) provides as follows:

"No foreign corporation, subject to the provisions of this act, shall be capable of making a valid contract, in this state until it shall have fully complied with the requirements of this act, and at the time holds an unrevoked certificate to that effect from the secretary of state."

Section 8 of the act (section 9070, Compiled Laws of 1915) concludes thus:

"Nor shall this act be construed to prohibit any sale of goods or merchandise which would be protected by the rights of interstate commerce."

It is undisputed that at the time of the making of the contract in suit the plaintiff was a corporation organized under the laws of the state of Illinois, and that it had not procured from the secretary of state of Michigan a certificate of authority to carry on its business in the latter state. If, therefore, this contract provided for the transaction by plaintiff of such business in the state of Michigan, it was a contract to do an unlawful act, and was, for that reason, void. If, on the other hand, said contract provided merely for an interstate commerce transaction, to which the work done in Michigan was only a necessary incident, such contract could not be, and was not, prohibited by any statute, but, in the language of section 8 of the Michigan statute just cited, was "protected by the rights of interstate commerce."

I am satisfied from the evidence that the installation of chairs, such as those here involved, in the cement floor of a theater, and in the manner herein described, is not so complex nor difficult, and does not require such special skill or apparatus, that the undertaking by a foreign corporation to perform such installation can be said to be essential to the making and performance by such corporation of a contract to manufacture such chairs in one state and to deliver them in another. I cannot doubt that the work and business of installation in Michigan prescribed by the contract in question contemplated the doing by plaintiff. of purely local business in this state after the completion of the interstate commerce part of the transaction involved by the intended arrival of the interstate commerce shipments at their destination in Flint and their delivery at the theater referred to.

As, therefore, the provision in the contract for the business of installation bore no necessary relation to the interstate commerce features of the transaction, and as in this case, as in the case of Browning v. Waycross, 233 U. S. 16, 34 Sup. Ct. 578, 58 L. Ed. 828, "that which was inherently intrastate did not lose its essential nature because it formed part of an interstate commerce contract to which it had no necessary relation," it must result that the contract was in violation of section 1 of the Michigan statute above referred to (section 9063, Michigan Compiled Laws of 1915), and void. Browning v. Waycross, supra; General Railway Signal Co. v. Virginia, 246 U. S. 500, 38 Sup. Ct. 360, 62 L. Ed. 854; York Manufacturing Co. v. Colley, 247 U. S. 21, 38 Sup. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611; Phillips Co. v. Everett, 262 Fed. 341 (C. C. A. 6); Power Specialty Co. v. Michigan Power Co., 190 Mich. 699, 157 N. W. 408; Sturtevant Co. v. Leitelt Iron Works, 196 Mich. 552, 163 N. W. 13; Decorators' Supply Co. v. Chaussee, 211 Mich. 302, 178 N. W. 665.

It follows that the question whether the contract was made in Michigan, as contended by the defendant, or in Illinois, as claimed by plaintiff, is immaterial, and need not be determined. Diamond Glue Co. v.

United States Glue Co., 187 U. S. 611, 23 Sup. Ct. 206, 47 L. Ed. 328; In re Springfield Realty Co. (D. C.) 257 Fed. 785.

[2] Nor am I able to agree with the contention of the plaintiff that if the contract be held void, because providing for intrastate business, yet the interstate commerce provisions thereof are severable and divisible from the clauses involving such intrastate business, and that plaintiff is entitled to recover compensation for the chairs manufactured, but not delivered nor installed by it. While it is clear that the facts and circumstances in the contemplation of the parties when making the contract, and the subject-matter of said contract, were such that it could have been so framed as to be severable as between the interstate commerce parts and the intrastate business provisions, it is equally clear, from an examination of the contract as prepared and reduced to writing and considered in the light of all of the surrounding circumstances that it is entire, not severable. The question is one of construction, and the intention of the parties is the controlling consideration. The general rule is stated by Elliott in his exhaustive work on the Law of Contracts, in volume 2, on page 828, as follows:

"The question whether a contract is entire or is to be regarded as severable is a question of construction. A contract is entire when its terms, nature, and purposes show that it is contemplated and intended that each and all of its parts, material provisions and the consideration are common each to the other and interdependent. * * * Whether or not the contract is entire or divisible depends on the intention of the parties. The intention is to be ascertained from the language used, the subject-matter of the contract, and from a consideration of all the circumstances."

The principal test used in deciding this question is thus referred to in volume 6 of Ruling Case Law, on page 858:

"The question is ordinarily determined by inquiring whether the contract embraces one or more subject-matters, whether the obligation is due at the same time to the same person, and whether the consideration is entire or apportioned. If the consideration to be paid is single and entire, the contract must be held to be entire, although the subject thereof may consist of several distinct and wholly independent items. The principle by which the courts are governed when they declare that a contract about several things, but with a single consideration in gross, is entire, and not severable, is that it is impossible to affirm that the party making the contract would have consented to do so, unless he had supposed that the rights to be acquired thereunder would extend to all the things in question. Under this rule there would seem to be no question that, where one party contracts to do certain work and the other to pay a certain price for the same, the contract is entire."

In this case, the sole purpose of the contract was the equipment of the theater of the defendant with the chairs in controversy. The agreement and consideration on the part of the plaintiff was entire, namely, as expressed in one sentence of the agreement, "to manufacture, transport, deliver, and set up ready for use" in the defendant's theater the specified number of chairs. The agreement and consideration of the defendant was likewise entire and single, consisting of its promise to pay to the plaintiff a certain stated price per chair, not when such chair should be manufactured, or when it should be sold, but in consideration of the performance by plaintiff of its sole, indivisible contract. A certain stated percentage of the entire price was to be paid.

at certain specified times. There was no apportionment, in the contract, of the purchase price as between the manufacture, transportation, delivery, or installation promised by the plaintiff. It was agreed that the title to the chairs should not pass to defendant, but should remain in plaintiff until full payment therefor in cash. These and other provisions and circumstances plainly indicate that the contract was intended by the parties to be, and therefore must be held to be, entire, and, as it cannot all stand, it must all fall.

It results that the motion for a new trial must be denied, and such an order will be entered.