97  209
197  333

# Wytheville.

## BUCK & OTHERS v. WARD & OTHERS.

### JUNE 22, 1899.

#### Absent, Riely, J.

1. CHANCERY JURISDICTION—*Fraud—Adequate Remedy at Law.*—Although
   fraud is an elementary ground of jurisdiction of courts of equity,
   the jurisdiction does not extend to all possible cases in which the
   commission of a fraud may be involved. If the right invaded is
   legal, and the remedy at law is full, adequate and complete, the
   concurrent jurisdiction in equity does not exist.

Appeal from a decree of the Circuit Court of Wythe county,
pronounced September 18, 1897, in a suit in chancery, wherein
the appellants were the complainants, and the appellees were the
defendants.

*Amended and affirmed.*

The opinion states the case.

*Fulton & Fulton* and *Crockett & Crockett,* for the appellants.

*White & Penn, W. S. Poage,* and *Blair & Blair,* for the appellees.

CARDWELL, J., delivered the opinion of the court.

This suit was instituted by W. W. Buck, W. A. Richmond,
E. W. Peery, and S. A. Flannagan in the Circuit Court of Wythe
county in August, 1895, and was removed to the Circuit Court
of Smyth county, where it was heard and determined, the last

named court overruling the demurrer of the defendants to the bill, but dismissing the bill upon a hearing of the cause on its merits, and an appeal was allowed complainants to this court.

The first question presented is one of jurisdiction raised by the demurrer.

The bill avers that R. N. Ward was the owner of a certain tract of land situated in Smyth county, upon which it was supposed by him that there were valuable deposits of minerals; that in order to effect a sale of said minerals, Ward associated with himself J. H. Brown and C. E. Cox as his secret agents and assistants to make such sale; that some time before January 2, 1895, complainants were approached by Brown and Cox, who represented that they were well acquainted with the land of Ward; that it was immensely valuable for the minerals and ores thereon; that the minerals and ores could be purchased very cheap; that Ward, for $3,000 cash, and $5,500 to be paid in six months, would grant an option for the minerals and ores lying in and upon his land to run six months from the time the option was given and the payment of $3,000 made, and would grant the right within six months to develop the minerals and ores by the use of machinery, &c.

After some other averments as to false representations made by Brown and Cox with the consent of Ward, and made for the purpose of inducing complainants to become members of a company, composed of complainants, J. H. Brown and C. E. Cox, formed for the purpose of buying an option on Ward's minerals and ores, the bill proceeds substantially as follows:

It was agreed (between complainants, Brown and Cox) that complainants, W. W. Buck, and W. A. Richmond would each take a one-sixth interest in the contract, Peery and Flannagan each a one-twelfth interest, Brown a one-third interest, and Cox the remaining one-sixth interest, and that each of them would pay their proportionate part of the cash and deferred payments to be made on the option, and his proportionate part of the

expenses incurred in developing the minerals and ores; that complainants consented to this arrangement without knowledge that Brown and Cox were acting as the secret agents of Ward, &c.; that they believed fully that Brown and Cox were joint purchasers with complainants, and that they would each pay his proportionate part of the cash and deferred payments, costs and expenses of developing the property; that after this had all been agreed to at Rural Retreat, in Wythe county, complainants, in company with Brown and Cox, on January 2, 1895, went to the office of the attorney of Ward in the town of Marion, Smyth county, where they met Ward, who represented to them that the cash price of the option was $3,000, and the deferred payment $5,500, and that Brown and Cox were joint purchasers of the option, and would pay their proportionate part of the cash, &c.; that after making these representations Ward produced the option contract, already signed by himself and wife, dated January 2, 1895, and, after the same had been read over, delivered it to complainants.

The option contract is here made a part of the bill, and, as the bill avers, it expressly provides that if the parties of the second part (complainants, Brown and Cox) should fail to close the contract within six months from its date, by paying to Ward the sum of $5,500, then the contract was to be null and void to all intents and purposes, and without any obligation on the part of Ward to return the cash payment of $3,000.

It is further averred that, by reason of the faith complainants had in the representations made that the contract was entered into in good faith by all parties thereto, they, upon delivery of the contract to them, paid Ward their proportionate part of the cash payment of $3,000, amounting to $1,500, and that Brown and Cox pretended to pay him their part of the $3,000, Brown drawing his check payable to Ward's order for $1,000, and Cox, in the same way, his check for $500; that it afterwards became known to complainants that, pursuant to a secret agreement be-

tween Ward, Brown and Cox, the checks of Brown and Cox were cancelled or destroyed by Ward, and the $1,500 received by him from complainants divided between himself, Brown and Cox, each getting $500 thereof.

Among the remaining averments of the bill, necessary to be noticed here are that, pursuant to the option contract, and with the knowledge and consent of Ward, Brown and Cox, complainants laid out and expended the sum of $1,185.65 in prospecting for and developing the minerals upon the land embraced in the option, and that for the interest of C. E. Cox therein, bought by Peery, Buck, and Brown at $750, Peery and Buck paid of the sum $250 each, leaving the remaining $250 to be paid Cox by Brown.

The amounts paid by complainants to Ward for the option, the amounts expended in prospecting and developing the minerals and ores, the dates expended, and by whom the money was furnished, as well as the sums paid by Peery and Buck to Cox for his interest in the option, are all made to appear by an account filed and made a part of the bill.

Ward, Brown and Cox are made parties defendant to the bill, and its prayer is " that the option contract be cancelled, annulled, and set aside for the fraud averred; that the said sum of $1,500, with interest thereon from the date of its payment, be repaid to complainants, in the proportion in which it was paid by them; that the said sum of $500, with like interest, paid by Peery and Buck to Cox for his interest in the contract may be repaid to them; and that the said sum of $1,185.65 laid out and expended by complainants, in prospecting for and developing said tract of land, may likewise be repaid to them, with interest on the several payments from the time they were made," &c.

From what goes before, it will be readily perceived that the gravamen of the complaint is that the defendants, Ward, Brown and Cox, obtained certain sums of money from complainants, and caused them to make an outlay and expenditure of other sums

by deceit, but more especially by that of Brown and Cox, complainants' own associates or partners in the enterprise engaged in. It is true, there are many averments of fraud in the bill, but merely denouncing a transaction as a fraud, does not make it such, and especially does it not make it such a fraud as it is peculiarly the province of a court of equity to take cognizance of.

"In general, courts of equity will not assume jurisdiction where the powers of the ordinary courts are sufficient for the purposes of justice, and, therefore, it may be stated as a general rule, subject to few exceptions, that where the plaintiff can have as effectual remedy in a court of law as in a court of equity, and that remedy is direct, certain, and adequate, a demurrer, which is in truth a demurrer to the jurisdiction of the court, will hold." Story's Eq. Pl., sec. 473 and authorities cited.

Pomeroy in his work on Equity Jurisprudence, discussing the subjects of which courts of equity and courts of law have concurrent jurisdiction, sec. 139, Vol. 1, says: "The fact that the legal remedy is not full, adequate, and complete is, therefore, the real foundation of this *concurrent* branch of the equity jurisdiction." And in sec. 178: "Even when the cause of action, based upon a legal right, does involve or present, or is connected with, some peculiar feature or incident of the same kind as those over which the concurrent jurisdiction ordinarily extends, such as fraud, accounting and the like, still, if the legal remedy by action and pecuniary judgment for debt or damages would be complete, sufficient, and certain—that is, would do full justice to the litigants—in the particular case, the concurrent jurisdiction of equity does not extend to such case. For example, whenever an action at law will furnish an adequate remedy, equity does not assume jurisdiction because an accounting is demanded or needed, nor because the case involves or arises from fraud, nor because a contribution is sought from persons jointly indebted, nor even to recover money held in trust, where an action for money had and received will lie."

Again, in section 914, Vol. 2, this learned author, citing a number of decisions as examples or illustrations of the doctrine adopted by the American courts, says: " The true doctrine is that where the estate or interest is equitable, the jurisdiction will exist and will always be exercised; where the estate, interest, or right is legal, and the remedies are equitable, the jurisdiction always exists, but will not always be exercised; where the right is legal, and the remedy is pecuniary and legal, the jurisdiction is concurrent and only exists where the remedy at law is inadequate."

In the case of *Green, trustee,* v. *Spaulding,* 76 Va. 416, the opinion of the court by Staples, J., says: " It is true that to give relief in cases of fraud is one of the elementary grounds of jurisdiction of courts of equity. I do not understand, however, it is thereby meant that the jurisdiction extends to all possible cases in which the commission of fraud may be involved. Where the party can have as effectual and complete a remedy in the courts of common law as in equity, and that remedy is direct, certain and adequate, there can be no just ground for resort to the equitable forum."

Commenting upon the opinion in the above case, and approving it, Richardson, J., in *Meek* v. *Spracher,* 87 Va. 170, does say that fraudulent misrepresentations of material matters, relied on by a party and inducing him to act to his injury, have always been regarded as matter of equitable jurisdiction and relief either by rescission or damages." But it could not have been there meant, that every case of fraud, or where the cause of action arises out of fraud, is within the scope of the elementary jurisdiction of courts of equity, but only that, where the circumstances of the particular case bring it within this elementary jurisdiction, in such a case, the jurisdiction of equity is not dependent upon the inadequacy of the legal remedy. Moreover, in that case the remedy sought was alternative; one by a rescission of the contract for the exchange of land because of fraud

in its procurement; and the other by a decree for damages grow-ing out of a deficiency in the quantity of land gotten by the complainant in the exchange.

So in the case of *Rorer Iron Co.* v. *Trout,* 83 Va. 397, cited in the opinion in *Meek* v. *Spracher, supra,* in support of the statement of the law just referred to, there was a mining lease to run for many years, to be cancelled on the ground that it was entered into by reason of the fraud of the lessor upon the lessees; and as said in *Green, trustee,* v. *Spaulding, supra:* " The existence of a fraudulent deed and its vacation constitute a distinct ground of equitable jurisdiction."

In this case, as in *Green, trustee,* v. *Spaulding,* there is no deed to be vacated, no impediment to be removed out of the way of the complainants in the enforcement of their remedy, if any they have, at law.

The bill upon its face calls for no relief that can be afforded complainants other than a decree for specific sums of money claimed of the defendants. As we have seen, the option contract asked to be rescinded, by its own terms and inherent limitations, became " null and void to all intents and purposes " at the ex-piration of six months from its date, unless the $5,500 due thereon was before that time paid to Ward, which the bill also avers was not done, and this suit was not brought until more than one month after the contract became a nullity.

It is contended, however, that the complainants could not maintain an action at law, because to found an action at law for deceit, the fraud must be a personal one on the part of the person making the representation, or some fraud which another impliedly authorized him to be guilty of, and an action of deceit cannot be brought against a prinicpal for the fraudulent misre-presentations of his agents, unless he has impliedly authorized the agent to make the representations.

That is this case, if the complainants have any cause of action against the defendants to their bill, for it avers that the deceit

practiced upon them was by the misrepresentations made by Ward, Brown and Cox, or by Brown and Cox as Ward's agents, in his presence, or by his consent and approval.

We are of opinion that the demurrer should have been sustained, and the bill dismissed upon the ground that the complainants had, if any, a complete, certain, and adequate remedy at law. Therefore the decree appealed from will be amended so as to dismiss the bill upon the demurrer, and as amended affirmed with costs to appellees, leaving the complainants to bring their action at law if they be so advised.

*Amended and affirmed.*