Richmond.

EWIG, ET ALS V. DUTROW, ET AL.

November 18, 1920.

1.  ADEQUATE REMEDY AT LAW—*Damages for Fraudulent Sale of Stock—Case at Bar.*—A bill in equity prayed for a pecuniary judgment for damages alleged to have been sustained by the complainants, the purchasers of stock, owing to the fraudulent representations of the defendants, the sellers, as to the value of the stock. Both defendants were directors of the corporation, and one of them the manager and treasurer. The bill did not pray for a rescission of the contract of sale, alleging that it would be inequitable to rescind it, nor did it ask for any other relief which it was the peculiar province of a court of equity to afford.

    *Held:* That the trial court did not err in sustaining a demurrer to the bill on the ground that it failed to state a sufficient case for equitable jurisdiction, as a full, complete and adequate remedy might be had at law.

2.  ADEQUATE REMEDY AT LAW—*General Rule.*—If the right invaded is legal, and the remedy at law is full, adequate, and complete, the concurrent jurisdiction in equity does not exist.

3.  EQUITY—*Jurisdiction—Complicated Accounts.*—Where the fact to be determined is whether or not the true condition of a corporation was fairly indicated in the financial statements and representations alleged to have been made by the defendants, the sellers of stock in the corporation, to complainants, the purchasers of the stock, there is no question of complicated accounts between the parties to the litigation. While it might be necessary to have the evidence of expert accountants as witnesses, this does not determine the question of jurisdiction of equity. Juries are constantly called upon to consider and pass upon such testimony.

4.  APPEAL AND ERROR—*Judgment of Appellate Court—Section 6365, Code of 1919.*—Section 6365 of the Code of 1919 does not authorize the Supreme Court of Appeals to change the decree of the lower court, except where such decree is reversed in whole or in part; hence the Supreme Court of Appeals in affirming a decree dismissing a bill for lack of equitable jurisdiction cannot remand with direction to transfer the case to the law side of the court.

Appeal from a decree of the Circuit Court of Rocking-ham county.  Decree for defendants.  Complainants appeal.

*Affirmed.*

The opinion states the case.

*Ed. C. Martz* and *D. O. Dechert,* for the appellants.

*Geo. N. Conrad,* for the appellees.

PRENTIS, J., delivered the opinion of the court.

The petitioners filed their bill against J. Paul Dutrow and William B. Dutrow, alleging in substance that the Valley Hardware Company, Inc., having a maximum capital stock of $25,000, divided into 250 shares of the par value of $100 each, had since its formation been conducting a retail and wholesale hardware business; that on the 9th of May, 1917, there were outstanding 195 shares of such stock, 108 of which were owned by the defendants, both of whom were directors of the company, and J. Paul Dutrow its manager and treasurer; that prior to said date there were negotiations between the defendants and I. S. Ewing for the sale of the 108 shares of said stock, and on that date and during the pendency of the negotiations the defendants represented that upon the basis of the net assets of the corporation the stock was worth at least $130 per share, that the book value thereof was $130.50 per share, and that in support of such representations they presented certain statements purporting to be true and correct balance sheets of the company as of December 31, 1916, which indicated such book value; that relying upon the truth of these representations and financial statements, Ewing was induced to buy all of such stock, paying the defendants therefor

53

$14,000 in cash; that subsequently he sold to the other complainants, his sisters and brothers-in-law, and his father-in-law, a considerable part of such stock at the price he paid for it, $130 per share, such purchases being induced on their part by their reliance upon Ewing's statement to them, predicated upon the financial statement upon which he relied at the time he purchased from the defendants; that thereafter the complainant, Ewing, still relying upon the said statements and balance sheets, purchased of Sibert, another stockholder, ten shares of the stock for $120 per share, and sold the same to Grove, one of his co-complainants, at $130 per share, and that Grove was also induced by him to purchase in reliance upon the truth of the representations referred to. That thereafter the company issued forty additional shares of capital stock, of which thirty-five shares were purchased by Ewing, and four shares purchased by one of his sisters, and that these purchases were also made in reliance upon said financial statement and representations. That these financial statements and representations were false, and that as a result of many discrepancies therein it appears that the value of the stock at the time of the purchase did not exceed the sum of $72.00 per share, and the market value, if it had any, was far less than the book value. That these books, prior to the purchase, had been kept under the immediate supervision and direction of the defendant, J. Paul Dutrow, and that both of the defendants knew at the time the representations were made that they were false and fraudulent; that they were made for the purpose of deceiving Ewing and did in fact deceive and mislead him and the other complainants. That in the latter part of the year 1917, the complainants' suspicions were aroused, but it was not until the month of March, 1918, that, as a result of the audit of the books of the corporation, they confirmed their suspicions and learned that the statements were materially false and fraudulent.

That because of the continued operation of the business of the corporation, in the course of which Ewing had become bound as endorser upon certain negotiable notes which were discounted and which were beyond the control of the corporation, or of the complainant, amounting to at least $12,000, and during which continued transaction of its business the status of the affairs of the corporation has materially changed, by reason of the issue of the additional shares of stock, as well as by reason of a very considerable increase in the value of the said shares resulting from the management of the affairs of said company by the complainant, Ewing, a restoration of the *status quo* by a cancellation of said purchases of stock would be inequitable; and the complainants therefore allege that they are entitled to recover from the defendants the difference between the sums paid for the shares of stock and the actual value thereof, and they pray for proper accounts, the ascertainment of the consequential damages sustained, and for a recovery against the defendants.

There was a demurrer to the bill upon several grounds, the third of which is, that "the complainants have failed to state a sufficient cause for equitable jurisdiction or the relief prayed for." This demurrer was sustained and the bill dismissed, of which the appellants are here complaining.

[1, 2] The question raised has been much discussed, and the rule adopted in England is different from that supported by the weight of authority in the United States. It must be noted that the bill in this case does not pray for a rescission of the contract; indeed, it alleges that it would be inequitable to rescind it. Nor do the complainants ask for any other relief which it is the peculiar province of a court of equity to afford. The prayer is for a pecuniary judgment for the damages alleged to have been sustained. This is to be borne in mind in all that is hereinafter said.

In 10 Ruling Case Law, p. 274, the discussion of the concurrent jurisdiction of law and equity concludes thus: "The rule adopted in the great majority of American jurisdictions, however, is that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury. And in some courts, notably the federal courts, this rule is made obligatory by virtue of the existence of an express statutory prohibition against a party pursuing his remedy in such cases in a court of equity. Moreover, even in those jurisdictions which uphold the right of a court of equity to assume jurisdiction in certain cases regardless of the existence of an adequate remedy at law, it is very frequently held that, as a rule of practice, such a court will not take cognizance where an adequate legal remedy exists, unless special reasons therefor are shown. Therefore, as a general conclusion, it may be said that wherever there exists at law a complete and adequate power, either for the prosecution of a right or the redressing of a wrong, courts of equity, with possibly the exception of a few cases of concurrent authority, have no jurisdiction or power to act." Citing *Hipp* v. *Babin*, 19 How. 271, 15 L. Ed. 633; *Johnson* v. *Swanke*, 128 Wis. 68, 107 N. W. 481, 8 Ann. Cas. 544, 5 L. R. A. (N. S.) 1048, and note; *Jones* v. *Newhall*, 115 Mass. 244, 15 Am. Rep. 97.

In *Root* v. *Lake Shore, etc., Ry. Co.*, 105 U. S. 207, 26 L. Ed. 981, this is said: "It is the fundamental characteristic and limit of the jurisdiction in equity that it cannot give relief when there is a plain and adequate and complete remedy at law; and hence it had no original, independent and inherent power to afford redress for breaches of contract or torts, by awarding damages; for to do that

was the very office of proceedings at law. When, however, relief was sought which equity alone could give, as by way of injunction to prevent a continuance of the wrong, in order to avoid multiplicity of suits and to do complete justice, the court assumed jurisdiction to award compensation for the past injury, not, however, by assessing damages, which was the peculiar office of a jury, but requiring an account of profits, on the ground that if any had been made, it was equitable to require the wrongdoer to refund them, as it would be inequitable that he should make a profit out of his own wrong."

Although the concurrent jurisdiction of English chancery courts in such cases to award pecuniary compensation for mere breaches of contract, based upon allegations of fraud, is perfectly settled, this from the case of *Newham v. May*, 13 Price, 260, a suit in equity, seeking reasonable compensation for the difference between the actual value of property sold and its value as falsely represented by the vendor, decided in 1824, is pertinent:

"Alexander, Lord Chief Baron.—If I thought that this case turned upon the question of jurisdiction, I should take time to consider the point further. It is not in every case of fraud that relief is to be administered in a court of equity. In the case, for instance, of a fraudulent warranty on the sale of a horse, or any fraud upon the sale of a chattel, no one, I apprehend, ever thought of filing a bill in equity. The cases of compensation in equity I consider to have grown out of the jurisdiction of the courts of equity as exercised in respect of contracts for the purchase of real property, where it is often ancillary, as incidentally necessary to effectuate decrees of specific performance. This, however, appears to me to be no more than a common case of fraud by means of misrepresentation, raising a dry question of damages—in effect, a mere money demand."

In 2 Pomeroy's Eq. Jur. (4th ed.), sec. 914, referring to

the American doctrine, it is said: "The doctrine is settled that the exclusive jurisdiction to grant purely equitable remedies, such as cancellation, will not be exercised, and the concurrent jurisdiction to grant pecuniary recoveries does not exist, in any case where the legal remedy, either affirmative or defensive, which the defrauded party might obtain, would be adequate, certain and complete." *Big Huff Coal Co.* v. *Thomas,* 76 W. Va. 161, 85 S. E. 171.

This American doctrine is said to have had its inducement and foundation in the Federal courts, because of the statute expressly forbidding equity jurisdiction where the remedy at law is adequate, and also both in the Federal and State courts, because of the constitutional provisions as to trials by jury, which have been construed to forbid equitable jurisdiction in controversies which can be determined at law.

While this precise question may not be concluded in Virginia, there are several cases in which there are expressions tending to support the generally accepted American doctrine.

In *Green, Trustee,* v. *Spaulding,* 76 Va. 417, Judge Staples says: "It is very true that to give relief in cases of fraud is one of the elementary grounds of jurisdiction of courts of equity. I do not understand, however, it is thereby meant that this jurisdiction extends to all possible cases in which the commission of a fraud may be involved. Where the party can have as effectual and complete a remedy in the courts of common law as in equity, and that remedy is direct, certain and adequate, there can be no just ground for resort to the equitable forum."

In *Goddin* v. *Bland & Bro.,* 87 Va. 708, 13 S. E. 145, 24 Am. St. Rep. 678, in which it was sought to enjoin an action at law for the recovery of the price of cordwood, on the allegation that the accounts were complicated, this court refused to sustain the jurisdiction of the chancery

court, for the reason that every defense which was available in equity could have been presented in the action at law.

In *Wilson* v. *Hundley*, 96 Va. 100, 30 S. E. 492, 70 Am. St. Rep. 837, this is said: "A contract induced by fraud is not void, but voidable at the option of the party injured by the fraud. Upon the discovery of the fraud, he has, as a general rule, the choice of two remedies:. He may elect to rescind the contract, if he can restore what he has received in the same state or condition in which he received it, and sue for and recover back the consideration he has paid or given, or, if he has not paid or given anything, repudiate the contract, and rely, when sued, upon the fraud as a complete defense; or he may elect to retain what he has received under the contract, and bring an action to recover damages for injury he has sustained from the deceit. By adopting the latter course, he, in effect, affirms the contract, but not as made in good faith. He consents to be bound by its provisions, but does not thereby release or waive his claim for damages arising from the fraud collateral to the agreement." Citing cases.

*Buck* v. *Ward*, 97 Va. 209, 33 S. E. 513, tends also to support the decree of the trial court. That was a suit in equity to cancel an option contract for the purchase of land, and to recover the amount paid therefor, together with the amount expended by the complainants in prospecting and developing the land, based upon alleged false and fraudulent misrepresentations. The court affirmed the decree of the trial court which sustained a demurrer to the bill. Referring to the general jurisdiction of equity to rescind contracts and award compensation in cases of fraud, this is said: "But it could not have been meant, that every case of fraud, or where the cause of action arises out of fraud, is within the scope of the elementary jurisdiction of courts of equity, but only that, where the circumstances of the particular case bring it within this elementary juris-

diction, in such a case, the jurisdiction of equity is not dependent upon the inadequacy of the legal remedy." It appears then that if the right invaded is legal, and the remedy at law is full, adequate and complete, the concurrent jurisdiction in equity does not exist.

In *Kane* v. *Va. Coal & Iron Co.*, 97 Va. 329, 33 S. E. 627, it is held that a bill to remove a cloud upon a title by one not in possession of the land cannot be maintained because his remedy at law by action of ejectment is adequate.

No good purpose would be served by undertaking to discuss the question elaborately, for it has been frequently done by courts and text writers. Upon the face of the bill it appears that the claim of the complainants here is for pecuniary compensation alone. They propose to retain every benefit which they have received under the contract, expressly disclaim any desire to have it rescinded, and only ask for damages for the injuries they claim to have sustained by reason of the alleged deceit. That they have the right to bring an action in the nature of an action on the case, denominated an action of deceit, for such damages is clear. This action is of ancient origin in England. By the terms of the bill the complainants allege that they have been defrauded, elect to treat the contract as subsisting and thereby in effect affirm it and consent to be bound by its provisions; but they do not release or waive their claim for damages arising out of the alleged fraud. The allegations of fraud contained in the bill would support such an action by Ewing, for it only asks for the relief which could be thereby obtained. *Jordan* v. *Annex Corporation*, 109 Va. 630, 64 S. E. 1050, 17 Ann. Cas. 267.

[3] While there is nothing in the bill itself as to the complication of the accounts, some effort is made in the briefs to show that the jurisdiction in equity exists here because of such complication. Even if we could consider this point, we would be bound to conclude it against the appellants,

because there is no question of complicated accounts between the parties to this litigation. The fact to be determined is whether or not the true condition of the business was fairly indicated in the financial statements and representations alleged to have been made by the defendants, and while it may be necessary to have the evidence of expert accountants as witnesses, this does not determine the question of jurisdiction. Juries are constantly called upon to consider and pass upon such testimony, and in our view the remedy of the complainants at law is as full, complete and adequate as in equity.

If the new Code, which became effective January 13, 1920, had been in force at the time the decree appealed from was entered, it would have been the duty of the trial court, under Code 1919, section 6084, to transfer the case to the common law docket and to order such changes in or amendments of the pleadings as might be necessary to conform them to the usual and proper practice in common law actions.

[4] As the law stood when the case was decided by the circuit court, its decree is right and must be affirmed, but without prejudice to the right of the appellants to assert their claims at law, if so advised. Section 6365 of the Code does not authorize this court to change the decree of the circuit court, except where such decree is reversed in whole or in part, hence we cannot remand with direction to transfer the case to the law side of the court.

There are other grounds of demurrer stated, but as this is sufficient to dispose of the case, we will not discuss them.

*Affirmed.*